Jacob J. Schwabtzwald, J.
This is an application for an order pursuant to article 78 of the Civil Practice Act to review the determination of the State Civil Service Commission which affirmed a finding by the New York City Transit Authority, petitioner’s employer, that petitioner was a person of doubtful trust and reliability within the meaning of the Security Risk Law (L. 1951, ch. 233, as amd.) and to declare petitioner’s ensuing suspension and discharge null and void.
At this time mention should be made of the fact that while the application herein was originally made returnable in this court on April 23, 1956, it was upon request of the parties adjourned from time to time and then finally adjourned without definite date and to lie dormant pending the determination of a similar case which was then in the process of being considered by the appellate courts of this State and subsequently by the United States Supreme Court. That case, Matter of Lerner v. Casey (2 N Y 2d 355, affd. 357 U. S. 468) hereinafter referred to in detail, has finally been decided by the United States Supreme Court. The parties had expected that the decision in Lerner v. Casey would prove to be determinative of the issues in the present proceeding brought by the petitioner Patrick J. Hehir. But the expectation did not fully materialize. The parties disagree as to the effect- of the Supreme Court decision.
Consequently, at the request of the petitioner, the present proceeding has been revived for the purpose of having a determination made thereon.
Specifically, the petitioner seeks a declaration by the court (1) that the investigation conducted by the respondent, Commissioner of Investigation of the City of New York, was “ beyond his power, illegal, and void ”; (2) that the respondent, New York City Transit Authority, “ acted arbitrarily, unfairly and capriciously and without any evidence whatsoever in suspending and discharging petitioner (3) that the respondent, State Civil Service Commission, “ acted arbitrarily, unfairly and capriciously and without any evidence whatsoever in the review and affirmance ” of the afore-mentioned action taken by the Transit Authority; and (4) that the petitioner be restored to his former status as an employee of the Transit Authority and to his full rights under the Civil Service Law.
Petitioner was employed by the Transit Authority as a towerman. His duties required close supervision to the care, maintenance and operation of the signal system, more importantly, the interlocking levers and emergency devices. As a *246 uniformed .employee, petitioner had general access to the operating areas of the Transit System without hindrance.
The petitioner, who had been employed in the Transit System since 1926 except for a brief period, was examined by the Commissioner of Investigation on November 29, 1954, as a result of information received by the commissioner that the petitioner, Hehir, allegedly engaged in subversive activities. At the hearing Hehir was accompanied by counsel. Relative to the inquiry as to membership in the Communist party, petitioner testified that “I’m not a member of the Communist party.” As to past membership in the Communist party, Hehir refused to answer, except to say, ‘ ‘ I am not now a member of the Communist party,” and, again, “ My answer is the same. I am not now a member of the Communist party.”
In answer to the commissioner’s direct question, “Isn’t it true that you were a member of the Communist party?”, Hehir responded, for the third and fourth times, with the same denial of present membership and interjected the comment: “That is the answer, the only answer, I will give you. . I must answer that in that manner.”
The report of the Commissioner of Investigation on December 10, 1954 showed that “ Information was received by this department to the effect that Patrick Hehir, Towerman, New York City Transit Authority, was allegedly engaged in subversive activities,” and that petitioner testifying under oath “ refused to answer questions relating to past membership in the Communist party.”
Several months later, on1 February 18, 1955, petitioner appeared before the Transit Authority for questioning under oath and again persisted in refusing to make any answer regarding past membership in the Communist party. He said: “ This is where I stop, Mr. McNally. This is the same as Pine St. [Office of Commissioner of Investigation.] * * * I am not going to answer any further questions. That is the $64 question. I won’t answer any more, * * * My answer is the same, Mr. McNally. I. am not now a member of the Communist party.”
Despite being advised that he could not be permitted to continue in the employ of the Transit Authority under these circumstances, petitioner nevertheless refused to answer as to past membership. He was informed that under the provisions of the law he had 30 days within which to change his mind about testifying, even after suspension by the Transit Authority. But his response thereto was the positive statement that, ‘ ‘ I *247 won’t change my mind.” Nor did he thereafter change his mind.
The Transit Authority advised the petitioner on March 3, 1955 that ‘ ‘ upon all the evidence, reasonable grounds exist for belief that because of doubtful trust and reliability, your employment # * * will endanger the security or defense of the Nation and the State,” and allowed him 30 days within which to show evidence why he should be reinstated.
Subsequently, on April 28, 1955, the Transit Authority made a finding that petitioner was a person of doubtful trust and reliability within the meaning of the Security Risk Law and terminated his services. The petitioner had failed to seek reinstatement under the provisions of that law but had instead advised the Transit Authority in writing that he challenged the constitutionality of the law itself.
Pursuant to an appeal filed by the petitioner with the State Civil Service Commission, a hearing was held by that commission on August 12, 1955. Though obtaining the hearing, petitioner failed to take advantage of the opportunity to testify. He did not appear there, and was instead represented by an attorney. On the basis of the filed record and oral argument, the commission affirmed the. Transit Authority’s action in terminating petitioner’s services.
With the exception of certain inconsequential differences existing between the facts in the instant application and those in Matter of Lerner v. Casey (2 N Y 2d 355), just recently affirmed by the United States Supreme Court (357 U. S. 468, 469), the court finds that the holdings in the Lerner case are determinative of the principal issues herein raised.
The factual differences are minor. In the Lerner case the petitioner refused to answer questions as to both present and past membership in the Communist party, while here the petitioner refused to answer only as to past membership. In Lerner, no attempt was made to pursue the procedural remedy by appealing to the State Civil Service Commission.
The Lerner case involved a subway conductor, which presented even a weaker situation than here. Lerner was first suspended, as required by administrative procedure, and then discharged by the Transit Authority. He was charged with failing to answer, during the course of an investigation, the question of the Commissioner of Investigation of the City of New York whether he was then a member of the Communist party. He claimed the privilege under the Fifth Amendment of the United States Constitution not to incriminate himself. *248 The Transit Authority ‘ ‘ found, upon review, that, upon ah the evidence, reasonable grounds existed for the belief that because of his doubtful trust and reliability, the employment of petitioner [Lerner] in the position of conductor endangered the security or defense of the nation and the State.” (2 NY 2d 355, 361, supra.)
In the Lerner case the Court of Appeals found that the employees of the New York City Transit Authority were included within the intendment of the Security Risk Law and that the city investigation commissioner had jurisdiction to conduct the inquiry. It also found that the Transit Authority was authorized to discharge a conductor merely upon a showing that, ‘ ‘ when asked if he was then a member of the Communist party, he refused to answer, and then gave as a reason for so refusing, that to answer might tend to incriminate him ” (pp. 365, 368). The Court of Appeals also held the Security Risk Law to be constitutional.
In the United States Supreme Court, Lerner presented the initial challenge that the Security Risk Law was unconstitutional for the reason that it deprived him “ of procedural due process, in that it provides for dismissal of employees in the first instance without a statutory right to a hearing, opportunity for cross-examination, or disclosure of the evidence on which dismissal is based.” (357 U. S. 468, 473, supra.) This contention was met directly by the court’s pertinent double comment immediately following the foregoing quoted sentence: ‘ ‘ However, appellant is in no position to complain of procedural defects in the statute. His own refusal to answer blocked proceedings at his appearance before the Department of Investigation, and more important he'failed to pursue his administrative remedy by appealing to and obtaining a hearing before the State Civil Service Commission.”
Before continuing the examination of the Lerner Supreme Court decision, made necessary in order to appreciate fully its definite applicability to the present situation, the court will digress momentarily from its charter course to consider preliminarily a point raised by the petitioner purporting to distinguish the facts in the two cases.
It is true, as contended, that Lerner did' not avail himself of a hearing before the State Civil Service Commission, to which he had a right, and that the petitioner herein did seek and obtain a hearing. But the distinction is without beneficial effect to the petitioner’s cause.
*249 At the hearing, as above noted, petitioner made no attempt to produce any further evidence affecting his conduct in refusing to answer the relevant question as to prior association in the Communist party. Consequently the petitioner cannot complain that the commission was required to rely solely upon the written record for decision in addition to the oral argument of counsel. However, petitioner did obtain an administrative review of the record, which Lerner had waived by appealing directly to the courts.
Also, petitioner could have taken advantage of the opportunity afforded by the hearing, had he so desired, to explain his questionable conduct.
While Lerner waived the hearing and Hehir did not, they both succeeded in effectively avoiding the opportunity to explain their reticence to respond to the directed inquiries. In this connection, the concise phraseology contained in the Supreme Court decision is appropriately pertinent: ‘ ‘ His [Lerner’s] own refusal to answer blocked proceedings at his appearances ” (p. 473).
The finding against the petitioner in both cases was based upon his conduct when appearing before the Commissioner of Investigation and the Transit Authority. The hearing before the Commissioner of Investigation was found necessary because of confidential information received concerning the employee. Petitioner was not entitled to be apprised of the sources of the information received. In order to make a finding as to whether or not an employee was a member of a subversive group a “ proper investigation and inquiry ” must be conducted (L. 1951, ch. 233, § 5). The Investigation Commissioner was bound to consider any fact relevant to a determination as to whether an employee was a member of a subversive group. It is for the commissioner to investigate and report the facts. Past membership- is a relevant fact; for, assuming past membership, it most certainly would require further facts and explanations to ascertain the employee’s present attitude and the completeness of any disassociation.
While the hearing before the Investigation Commissioner was called for the purpose of determining whether any association existed between the petitioner and the Communist party, petitioner was not discharged on that basis. The employee in both the Lerner and the Hehir cases was dismissed for failing to co-operate with the commissioner and the Authority in the investigation required by statute of the matter involving peti *250 tioner’s alleged activities. The conduct of the petitioner in refusing to answer relevant questions was determined by the Transit Authority, and approved by the State Civil Service Commission, and also by the courts, to constitute sufficient basis for a finding that reasonable grounds existed for the belief that the employee was of doubtful trust and reliability.
The court will now return to a further analysis of the Supreme Court decision. The petitioner’s argument, that no public emergency existed in 1954 justifying passage of the Security Risk Law, was effectively disposed of by the holding that “New York’s right to enact legislation to protect its public service against the employment of persons fairly deemed untrustworthy and unreliable, and therefore security risks, can hardly be regarded as constitutionally dependent upon the existence of a public emergency, and we do not think it open to us to inquire into the motives.” (Lerner v. Casey, 357 U. S. 468, 474.) Assessing the importance of Lerner’s job in the Transit System, the court found: “ Nor can we say that it was so irrational as to make it constitutionally impermissible for New York to apply this statute to one employed in the major artery of New York’s transportation system, even though appellant’s daily task was simply to open and shut subway doors ” (p. 474).
Perhaps the,court’s language most destructive to the Lerner appeal, and which is equally applicable to Hehir, was the ruling that, “We are not here concerned with the wisdom, but solely with the constitutional validity, of the application of this statute to appellant” (p. 474).
Lerner’s “ claim that the statute offends due process because dismissal of an employee may be based on mere present membership in the Communist Party * * * must also fail ’ ’ (p. 474). The statute simply makes membership in a subversive organization just one of the elements which, in the course of administrative proceeding, may enter into the ultimate determination as to ‘c doubtful trust and reliability. ’ ’ The discharge was not based upon Communist party membership in either case.
Appellant’s principal contention before the Supreme Court was that the administrative finding of reasonable grounds for belief concerning appellant’s “doubtful trust and reliability,” and therefore a security risk, offended due process. The court interpreted the New York Court of Appeals’ decision as holding that appellant was discharged ‘ ‘ because of the doubt created' as to his ‘ reliability ’ by his refusal to answer a rele *251 vant question put by his employer, a doubt which the court held justifiable quite independently of appellant’s reasons for his silence. In effect, the administrative action was interpreted to rest solely on the refusal to respond ” which had resulted in creating a doubt as to his trustworthiness and reliability (pp. 475-476).
The Supreme Court went on to say (p. 476): “In other words, we read the court’s opinion as meaning that a finding of doubtful trust and reliability ■ could justifiably be based on appellant’s lack of frankness, cf. Garner v. Board of Public Works, 341 U. S. 716; Beilan v. Board of Public Education, ante, p. 399 decided today, just as if he had refused to give any other information about himself which might be relevant to his employment. It was this lack of candor which provided the evidence of appellant’s doubtful trust and reliability which under the New York statutory scheme constituted him a security risk.” (Emphasis supplied.)
This would have been so even without a claim of privilege under the Fifth Amendment: ‘ ‘ had there been no claim of Fifth Amendment privilege, New York would have been constitutionally entitled to conclude from appellant’s refusal to answer what must be conceded to have been a question relevant to the purposes of the statute and his employment, cf. Garner v. Board of Public Works, [341 U. S. 716] supra, that he was of doubtful trust and reliability ”.(p. 477).
The Supreme Court pointed out that in the Garner case {supra): “a government employee can be required upon pain of dismissal to respond to inquiry probing into matters relevant to his employment, and that present membership in the Communist Party is such a matter. See also Beilan v. Board of Public Education [357 U. S. 399], supra ” (pp. 477-478).
The Beilan case, which was decided simultaneously with Lerner, involved a 1952 inquiry into a public school teacher’s past activities in the Communist party eight years earlier, and the teacher’s dismissal for failure, to answer the question regarding past association was upheld by the Supreme Court.
It must be noted that it was the court’s view in the Lerner case that the holdings in both the Garner and Beilan cases imposed more confining restrictions upon the governmental employee by finding an absolute duty to respond to permissible inquiries rather than a holding, as in the .New York case of Lerner, that an employee lacking in candor evidences doubt as to his trust and reliability. The court’s exact words were: ‘ ‘ Certainly it is not a controlling constitutional distinction that *252 New York, rather than impose on employees, as in Garner and Beilan, an absolute duty to respond to permissible inquiry upon threat of dismissal for refusal, has in these proceedings held that an employee lacking in candor to his governmental employer evidences doubt as to his trust and reliability ’ ’ (p. 478).
That New York chose to base its dismissal of employees upon a finding of doubtful trust and reliability, was held not to be constitutionally impermissible: “Neither the New York statute nor courts purported to' equate this ground for dismissal with ‘ disloyalty.’ That term, which carries a distinct connotation, was never relied upon by New York as justification for appellant’s dismissal” (p. 478).
In the Lerner case the petitioner attempted to explain his silence by relying upon the Fifth Amendment of the United States Constitution, which contention the Supreme Court found insufficient: “we cannot say that appellant’s explanation for his silence precluded New York from concluding that his failure to respond to relevant inquiry engendered reasonable doubt as to his trustworthiness and reliability ” (p. 479).
In contrast thereto, the petition now before the court makes no attempt whatsoever to explain petitioner’s refusal to answer.
Instead, petitioner contends he is pursuing his right in making a direct attack upon the Security Risk Law based upon the ground that his right as an employee to procedural due process has been impaired by the statute. According to petitioner’s reply brief, the suspension was based upon two grounds, to wit, (1) the refusal to answer as to “ past ” membership in the Communist party, and (2) having “ at one time ” been a member of the Communist party. The court cannot find any factual basis for petitioner’s alleged claim that he was at any time charged by his employer with having been a member of the Communist party or that he was discharged for that reason.
The determinant basis for the suspension and subsequent dismissal is fully revealed in the official records, which incidentially have been made part of the petition. The notice of suspension by the Transit Authority, summarizing the contents of the resolution adopted by the Authority, states two reasons for the suspension. Action was taken (1) because petitioner, while testifying under oath, refused to answer questions asked at the office of the Commissioner of Investigation relative to past membership in the Communist party, and (2) because petitioner, when being examined under oath by the Transit *253 Authority “ in connection with information which had been received by the Department of Investigation that you were at one time a member of the Communist Party, you refused to answer with respect to such past membership. ’ ’
The charge is that, information having been received from the Department of Investigation that petitioner was at one time a member of the Communist party, the petitioner on two separate occasions, while under oath, refused to answer any question whatsoever pertaining to past membership. He was being examined with respect to confidential information received by the Department of Investigation; he was discharged for refusing to co-operate with the authorities who were endeavoring to carry out the purposes and mandates of the Security Risk Law, a statute enacted in accordance with the sovereign power inherent in the State of New York, which declared the existence of a national state of emergency.
In the Lerner case the resolution, made the basis of the dismissal, noted not only the refusal to answer, but also “that further investigation has revealed activities on the part of [appellant] which give reasonable ground for belief that he is not a good security risk.” (See n. 7, supra, p. 473.) The footnote continues: ‘ ‘ These other activities were not revealed to appellant. But this issue is not before us, since the state court sustained the dismissal solely on the basis of appellant’s refusal to answer. In any event had appellant pursued his administrative remedy, he could have sought disclosure and review of such evidence before the Civil Service Commission.”
No unknown or unsupported charge has been made against the petitioner Hehir other than that for failure to answer under the circumstances herein related. Since petitioner was not discharged for having been a member of the Communist party, he cannot bring himself within the purview of the afore-mentioned footnote by means of an allegation that he was denied due process by virtue of the Transit Authority’s alleged failure to disclose the evidence upon which the dismissal was granted.
Also without merit is petitioner’s further contention contained in his reply brief, but not in the petition, that no evidence was presented ‘‘ in any of the proceedings below which would support the designation ” of the Transit Authority as a security agency. At the hearing before the State Civil Service Commission, the commission took judicial notice that the Transit Authority had so been designated. Furthermore, the Court of Appeals in Matter of Lerner v. Casey (2 N Y 2d 355, 364) stated: “On November 23, 1953, the State Civil Service Com *254 mission declared the New York City Transit Authority to he a security agency within the meaning of the Security Risk Law.”
Finally, the Supreme Court in Lerner v. Casey (supra, p. 471, n. 3) stated: “ The New York Court of Appeals held that the Transit Authority was a state body corporate subject to classification under the Security Risk Law and sustained the Commission’s determination that it was a ‘ security agency.’ 2 N. Y. 2d 355, 365-367, 141 N. E. 2d 533, 538-539. We consider ourselves bound by these holdings.”
Petitioner argues that since the statute involved in the Beilan case (supra) concerned school teachers, a field regarded as particularly delicate (cf. Adler v. Board of Educ., 342 U. S. 485), the holding therein requiring a response to questions pertaining to past membership in the Communist party should not be applied to a different field, i.e., the Transit System, particularly in view of the language used in the Lerner ease, to wit, ‘ ‘ Appellant, who had been sworn, was asked whether he was then a member of the Communist Party ” (357 U. S. 468, 471).
The court need only point out that the Beilan case was decided by the Supreme Court simultaneously with the Lerner case. While the Supreme Court emphasized the word “ then ” in the Lerner opinion, perhaps to differentiate that fact from the Beilan case where the issue revolved about past membership, the specific holding in the Beilan case cannot be disregarded. There the court upheld the dismissal of the State employee for refusing to answer questions pertaining to Communist party activities which had allegedly taken place eight years prior to the time of the inquiry.
Equally pertinent here is the fact that the Supreme Court in the Beilan case affirmed the dismissal based: “ upon petitioner’s refusal to answer any inquiry about his relevant activities — not upon those activities themselves. It took care to charge petitioner with incompetency, and not with disloyalty. It found him insubordinate and lacking in frankness and candor —it made no finding as to his loyalty.” (Beilan v. Board of Educ., 357 U. S. 399, 405-406.)
In that case the services of a teacher were terminated, not for disloyalty, but for incompetency resulting from a failure to answer as to matters relevant to the employee’s present usefulness, though the incidents had occurred in the past. As in the present case, it was the inquiry into the employee’s past activities, having a relevant bearing to his present competency, which constituted the basis for the ultimate dismissal.
*255 Bearing the foregoing facts in mind, this court cannot justifiably make a finding that the use of the word “ then ” in the Lerner case was in any way intended to imply that, had the inquiry therein been directed to “ past ” membership, the holding would have been otherwise.
It is claimed that “petitioner’s dismissal for the reasons given represent a change in his contract with the employing Authority,” citing Indiana ex rel. Anderson v. Brand (303 U. S. 95) and therefore an impairment of contract and a violation of section 10 of article I of the United States Constitution. This contention is specifically dispelled by the following quotation from the cited case of Indiana ex rel. Anderson v. Brand {supra, pp. 108-109): “Our decisions recognize that every contract is made subject to the implied condition that its fulfillment may be frustrated by a proper exercise of the police power but we have repeatedly said that, in order to have this effect, the exercise of the power must be for an end which is in fact public and the means adopted must be reasonably adapted to that end”.
Perhaps the heart of the matter now under consideration revolves about the right of inquiry in general under the Security Bisk Law. Petitioner urges in effect that this court should avoid “an undue extension of the Lerner case.” He claims that ‘ ‘ Individual rights of a constitutional character should not be swept away by an assumption that the Lerner case gives the State carte blanche wherever it can raise a cry of ‘ security.’ ”
In support of this contention petitioner cites some broad language appearing in Kent v. Dulles (357 U. S. 116, 130), but the decision in that case simply determined, without reaching any question of constitutionality, that the Congress had not by statutory authority delegated to the Secretary of State any power to circumscribe a citizen’s constitutional right of exit from the country, a right which the court found to be included within the sphere of the word ‘ ‘ liberty, ’ ’ as the word is used in the Fifth Amendment of the United States Constitution. Absent specific statutory authorization, the Supreme Court refused to “ infer that Congress gave the Secretary of State unbridled discretion to grant or withhold it [the passport].” {Supra, p. 129.)
In contrast to the foregoing case, the proceedings herein against petitioner were conducted under statutory authority.
It would appear that the petitioner, in seeking the adoption *256 of a narrow construction, in reality poses a problem apparently directed against tbe legislative wisdom in the enactment of the Security Risk Law, rather than ‘ ‘ the constitutional validity, of the application of this statute to ” the petitioner. (Matter of Lerner v. Casey, 357 U. S. 468, 474.)
For the reasons herein indicated, the petition is dismissed. Settle order on notice.