## LERNER *v.* CASEY ET AL., CONSTITUTING THE NEW YORK CITY TRANSIT AUTHORITY.

No. 165.   Argued March 4, 1958.—Decided June 30, 1958.

*Leonard B. Boudin* argued the cause for appellant. With him on the brief was *Victor Rabinowitz*.

*Daniel T. Scannell* argued the cause for appellees. With him on the brief were *Helen R. Cassidy* and *Edward L. Cox, Jr.*

*Ruth Kessler Toch*, Assistant Attorney General, argued the cause for the State of New York, as *amicus curiae,* urging affirmance. With her on the brief were *Louis J. Lefkowitz*, Attorney General, and *Paxton Blair*, Solicitor General.

*David I. Shapiro* and *Stephen C. Vladeck* filed a brief for the New York Civil Liberties Union, as *amicus curiae,* urging reversal.

MR. JUSTICE HARLAN delivered the opinion of the Court.

This case raises questions under the Fourteenth Amendment to the Constitution of the United States concerning the validity of appellant's dismissal from his position as a subway conductor in the New York City Transit System. The dismissal was pursuant to the Security Risk Law of the State of New York, N. Y. Laws 1951, c. 233, as amended, N. Y. Laws 1954, c. 105.

The Security Risk Law, enacted by New York in 1951,[1] provides in pertinent part as follows: The State Civil Service Commission is authorized to classify any bureau or agency within the State as a "security agency" (§ 3), defined as any unit of government ". . . wherein functions are performed which are necessary to the security or defense of the nation and the state . . . ." (§ 2.) The appointing authority in each such agency is given powers of suspension and dismissal as to any employee if, after investigation, it is found that, ". . . upon all the evidence, reasonable grounds exist for belief that, because of doubtful trust and reliability, the employment of such person . . . [in a security agency] would endanger the security or defense of the nation and the state" (§ 5). Such evidence is not to be restricted by normal rules prevailing in the courts, and the required finding may be based upon an employee's past conduct ". . . which may include, . . . but shall not be limited to evidence of . . . (d) membership in any organization or group found by the state civil service commission to be subversive" (§ 7).[2]

---

[1] The state statute was originally passed as an emergency measure and thereafter extended from year to year. The present terminal date is June 30, 1958.

[2] A subversive organization is defined in § 8 as one which is found ". . . to advocate, advise, teach or embrace the doctrine that the government of the United States or of any state or of any political subdivision thereof shall be overthrown or overturned by force, vio-

A discharged employee has a right of appeal to the Civil Service Commission, which may take further evidence (§ 6).

In November 1953 the Commission determined the New York City Transit Authority, which the appellees in this case constitute, to be a "security agency," [3] and in March 1954 it listed the Communist Party of the United States as a "subversive group," adopting, as contemplated by the Security Risk Law, the similar listing of the State Board of Regents made under the provisions of the Feinberg Law, N. Y. Laws 1949, c. 360, after hearings at which the Party appeared by counsel. In September 1954 appellant was summoned to the office of the Commissioner of Investigation of the City of New York in the course of an investigation being conducted under the Security Risk Law.[4] Appellant, who had been sworn, was asked whether he was *then* a member of the Communist Party, but he refused to answer and claimed his privilege against self-incrimination under the Fifth Amendment to the Federal Constitution.[5] After he had

---

lence or any unlawful means, or to advocate, advise, teach or embrace the duty, necessity or propriety of adopting any such doctrine . . . ."

[3] The New York Court of Appeals held that the Transit Authority was a state body corporate subject to classification under the Security Risk Law and sustained the Commission's determination that it was a "security agency." 2 N. Y. 2d 355, 365–367, 141 N. E. 2d 533, 538–539. We consider ourselves bound by these holdings.

[4] The Court of Appeals held that the Commissioner of Investigation, although a city official, was authorized to act with respect to these matters arising under the Security Risk Law and to conduct these investigations.

[5] Appellant did not specifically state that his refusal to answer was based on his belief that an answer might incriminate him but simply explained his silence by reference to the "Fifth Amendment." We consider this reference, without regard to the availability of the Fifth Amendment to appellant in this state investigation (see p. 477, *infra*), to be equivalent to an assertion of a claim of possible self-incrimination. See *Quinn* v. *United States*, 349 U. S. 155, 162–163; *Emspak* v. *United States*, 349 U. S. 190, 194.

been advised of the provisions of the Security Risk Law and given time to reconsider his refusal and to engage counsel, appellant, accompanied by counsel, made two further appearances in September and October before the Department of Investigation, on each of which he adhered to his initial position.

Appellees, informed of these events, thereupon adopted a resolution suspending appellant without pay and sent him a copy of the resolution with a covering letter. This letter notified appellant that his suspension followed a finding under § 5 of the Security Risk Law ". . . that upon all the evidence, reasonable grounds exist for belief that, because of doubtful trust and reliability . . . ," appellant's continued employment would endanger national and state security. This finding was based on appellant's refusal ". . . to answer questions as to whether or not he was a member of the Communist Party and [invocation of] the Fifth Amendment to the Constitution of the United States . . . ." Appellant was also advised, pursuant to § 5 of the Security Risk Law, that he had thirty days within which to submit statements or affidavits showing why he should be reinstated. At the expiration of this period appellees, having heard nothing further from appellant, dismissed him from his position by a resolution which confirmed the previous "suspension" findings.

Appellant did not appeal to the Civil Service Commission, as was his statutory right, but brought this proceeding in the state courts for reinstatement. He attacked appellees' actions on various grounds, including the constitutional grounds asserted here. The State Supreme Court, assuming jurisdiction despite appellant's failure to exhaust his administrative remedies, upheld the Security Risk Law and its application to appellant as constitutional, ruled adversely to appellant's state law contentions, and dismissed the proceeding. 138 N. Y. S.

2d 777. The Appellate Division, 2 App. Div. 2d 1, 154 N. Y. S. 2d 461 (2d Dept.), and the Court of Appeals, 2 N. Y. 2d 355, 141 N. E. 2d 533, both affirmed, each by a divided court. An appeal to this Court was brought under 28 U. S. C. § 1257 (2), and we postponed to the hearing on the merits the question of our jurisdiction. 355 U. S. 803. As will appear from this opinion, we consider that the constitutional questions before us relate primarily, and more substantially, to the propriety of the findings made by appellees rather than to the validity of the provisions of the Security Risk Law. Accordingly, we think it the better course to dismiss the appeal, and to treat the papers as a petition for a writ of certiorari, which is hereby granted.[6] 28 U. S. C. § 2103. Cf. *Sweezy* v. *New Hampshire*, 354 U. S. 234, 236.

We address ourselves initially to appellant's constitutional challenges to the Security Risk Law in its entirety or to certain of its provisions. It is said that New York's statute deprives him of procedural due process, in that it provides for dismissal of employees in the first instance without a statutory right to a hearing, opportunity for cross-examination, or disclosure of the evidence on which dismissal is based. However, appellant is in no position to complain of procedural defects in the statute. His own refusal to answer blocked proceedings at his appearances before the Department of Investigation, and more important he failed to pursue his administrative remedy by appealing to and obtaining a hearing before the State Civil Service Commission.[7]

---

[6] For convenience, we shall continue to refer to the parties as appellant and appellees.

[7] We must also reject the contention that appellant was denied due process in that the resolution made the basis for his dismissal noted not only his refusal to answer but also ". . . that further investigation has revealed activities on the part of [appellant] which give

Appellant further argues that the Security Risk Law could not be applied to him in 1954 since at that time no public emergency existed which could justify the law. But New York's right to enact legislation to protect its public service against the employment of persons fairly deemed untrustworthy and unreliable, and therefore security risks, can hardly be regarded as constitutionally dependent upon the existence of a public emergency, and we do not think it open to us to inquire into the motives which led the State Legislature to extend the Security Risk Law beyond its original effective period. Nor can we say that it was so irrational as to make it constitutionally impermissible for New York to apply this statute to one employed in the major artery of New York's transportation system, even though appellant's daily task was simply to open and shut subway doors. We are not here concerned with the wisdom, but solely with the constitutional validity, of the application of this statute to appellant.

Finally, the claim that the statute offends due process because dismissal of an employee may be based on mere present membership in the Communist Party, without regard to the character of such membership, cf. *Wieman* v. *Updegraff,* 344 U. S. 183, must also fail. Apart from the fact that the statute simply makes membership in an organization found to be subversive one of the elements which may enter into the ultimate determination as to "doubtful trust and reliability," appellant, as the Court

---

reasonable ground for belief that he is not a good security risk. . . ." These other activities were not revealed to appellant. But this issue is not before us, since the state court sustained the dismissal solely on the basis of appellant's refusal to answer. In any event had appellant pursued his administrative remedy, he could have sought disclosure and review of such evidence before the Civil Service Commission.

of Appeals viewed the administrative proceedings and as we accordingly treat them here, was not discharged on grounds that he was a party member.

We come then to what we consider appellant's major constitutional claim, which goes to the manner in which the Security Risk Law was applied to him. It is contended that the administrative finding of reasonable grounds for belief that he was "of doubtful trust and reliability," and therefore a security risk, offends due process. The contention is (1) that the finding rests on an inference, that appellant was a member of the Communist Party, which was drawn from appellant's invocation of the Fifth Amendment, and that this inference lacked any rational connection with appellant's refusal to answer based on the exercise of this constitutional privilege; and (2) that the drawing of such an inference was in any event in derogation of the policy behind the Fifth Amendment privilege and contrary to the teaching of this Court's decision in *Slochower* v. *Board of Higher Education,* 350 U. S. 551. We think this contention both misconceives the basis on which the Court of Appeals sustained appellant's dismissal and assumes incorrectly the availability of the Fifth Amendment to appellant in these proceedings. Consequently it must be rejected in both its aspects.

As we read its opinion, the Court of Appeals held that appellant had been discharged neither because of any inference of Communist Party membership which was drawn from the exercise of the Fifth Amendment privilege nor because of the assertion of that constitutional protection, but rather because of the doubt created as to his "reliability" by his refusal to answer a relevant question put by his employer, a doubt which the court held justifiable quite independently of appellant's reasons for his silence. In effect, the administrative action was inter-

preted to rest solely on the refusal to respond. The Court of Appeals said:

> "[N]o inference of membership in [the Communist] party was drawn from [appellant's] refusal to reply to the question asked . . . . [Appellant] was not discharged for invoking the Fifth Amendment; he was discharged for creating a doubt as to his trustworthiness and reliability by refusing to answer the question as to Communist party membership." 2 N. Y. 2d, at 372, 141 N. E. 2d, at 542.

In other words, we read the court's opinion as meaning that a finding of doubtful trust and reliability could justifiably be based on appellant's lack of frankness, cf. *Garner* v. *Board of Public Works*, 341 U. S. 716; *Beilan* v. *Board of Public Education, ante,* p. 399, decided today, just as if he had refused to give any other information about himself which might be relevant to his employment. It was this lack of candor which provided the evidence of appellant's doubtful trust and reliability which under the New York statutory scheme constituted him a security risk. The Court of Appeals went on to reason that had appellant refused, without more, to answer the question, the finding of "doubtful trust and reliability" would have undoubtedly been permissible, and that the basis for such a finding, in appellant's refusal to answer, was not destroyed by the claim of the Fifth Amendment privilege because the Commissioner was not required to accept that claim as an adequate explanation of the refusal.

Accepting, as we do, these premises of the state court's opinion, we find no constitutional block to its decision sustaining appellant's dismissal from employment. Postponing for the moment the question whether appellant was entitled to rely in this local investigation on the federal privilege, it seems clear that the discharge here

in any event was unlike that in *Slochower* v. *Board of Higher Education, supra,* in that, as definitively interpreted by the Court of Appeals, it was not based on the fact that the employee had asserted Fifth Amendment rights. Further, in *Slochower* such a claim had been asserted in a federal inquiry having nothing to do with the qualifications of persons for state employment, and the Court in its opinion carefully distinguished that situation from one where, as here, a State is conducting an inquiry into fitness of its employees. Nor, as the Court of Appeals stressed, was the claim of possible self-incrimination made the basis for an inference that appellant was a Communist and therefore unreliable. Hence we are not faced here with the question whether party membership may rationally be inferred from a refusal to answer a question directed to present membership where the refusal rests on the belief that an answer might incriminate, cf. *Adamson* v. *California,* 332 U. S. 46, or with the question whether membership in the Communist Party which might be "innocent" can be relied upon as a ground for denial of state employment. Cf. *Wieman* v. *Updegraff, supra; Konigsberg* v. *State Bar of California,* 353 U. S. 252; *Schware* v. *Board of Bar Examiners,* 353 U. S. 232.

We think it scarcely debatable that had there been no claim of Fifth Amendment privilege, New York would have been constitutionally entitled to conclude from appellant's refusal to answer what must be conceded to have been a question relevant to the purposes of the statute and his employment, cf. *Garner* v. *Board of Public Works, supra,* that he was of doubtful trust and reliability. Such a conclusion is not "so strained as not to have a reasonable relation to the circumstances of life as we know them." *Tot* v. *United States,* 319 U. S. 463, 468. This Court pointed out in *Garner* that a government employee can be required upon pain of dismissal to respond

to inquiry probing into matters relevant to his employ-
ment, and that present membership in the Communist
Party is such a matter. See also *Beilan* v. *Board of
Public Education, supra.* Certainly it is not a con-
trolling constitutional distinction that New York, rather
than impose on employees, as in *Garner* and *Beilan,* an
absolute duty to respond to permissible inquiry upon
threat of dismissal for refusal, has in these proceedings
held that an employee lacking in candor to his govern-
mental employer evidences doubt as to his trust and reli-
ability. Finally, unlike the situation involved in *Konigs-
berg* v. *State Bar of California, supra,* there is here no
problem of inadequate notice as to the consequences of
refusal to answer, for appellant was specifically notified
that continued refusal might lead to his dismissal.

The fact that New York has chosen to base its dismissal
of employees whom it finds to be of doubtful trust and
reliability on the ground that they are in effect "security
risks" hardly requires a different determination. The
classification is not so arbitrary that we would be justified
in saying that it is constitutionally impermissible in its
application to one in appellant's position. Neither the
New York statute nor courts purported to equate this
ground for dismissal with "disloyalty." That term,
which carries a distinct connotation, was never relied
upon by New York as justification for appellant's
dismissal.

The issue then reduces to the narrow question whether
the conclusion which could otherwise be reached from
appellant's refusal to answer is constitutionally barred
because his refusal was accompanied by the assertion
of a Fifth Amendment privilege. We think it does not.
The federal privilege against self-incrimination was not
available to appellant through the Fourteenth Amend-
ment in this state investigation. *Knapp* v. *Schweitzer,
ante,* p. 371, decided today; *Adamson* v. *California,*

*supra.* And we see no merit in appellant's suggestion that, despite the teachings of these cases, the plea was available to him in this instance because the State was acting as agent for, or in collaboration with, the Federal Government. This contention finds no support in the record. Hence we are not here concerned with the protection, as a matter of policy or constitutional requirement, to be accorded persons who under similar circumstances, in a federal inquiry, validly invoke the federal privilege. Cf. 18 U. S. C. § 3481; *Wilson* v. *United States,* 149 U. S. 60; *Slochower* v. *Board of Higher Education, supra; Grunewald* v. *United States,* 353 U. S. 391. Under these circumstances, we cannot say that appellant's explanation for his silence precluded New York from concluding that his failure to respond to relevant inquiry engendered reasonable doubt as to his trustworthiness and reliability.

We hold that appellant's discharge was not in violation of rights assured him by the Federal Constitution.

*Affirmed.*

[For concurring opinion of MR. JUSTICE FRANKFURTER, see *ante,* p. 409.]

[For dissenting opinion of MR. CHIEF JUSTICE WARREN, see *ante,* p. 411.]

[For dissenting opinion of MR. JUSTICE DOUGLAS, joined by MR. JUSTICE BLACK, see *ante,* p. 412.]

[For dissenting opinion of MR. JUSTICE BRENNAN, see *ante,* p. 417.]