[L. A. No. 23266. In Bank. Oct. 16, 1959.]

RAPHAEL KONIGSBERG, Petitioner, v. THE STATE BAR OF CALIFORNIA et al., Respondents.

Edward Mosk for Petitioner.

A. L. Wirin, Fred Okrand and High R. Manes as Amici Curiae on behalf of Petitioner.

Frank B. Belcher, Robert D. Burch and Ralph E. Lewis for Respondents.

THE COURT.—Petitioner seeks review of the action of the Committee of Bar Examiners in refusing to certify him to this court for admission to practice law in California. Also, he has applied directly to this court for admission to practice.

The Committee of Bar Examiners is established by the

Board of Governors of The State Bar of California pursuant to statutory authority. It conducts the bar examinations and certifies directly to this court those applicants for admission who fulfill the requirements of the code (Bus. & Prof. Code, § 6046). This court may admit to practice any applicant so certified (Bus. & Prof. Code, § 6064). An applicant who is refused certification may have the action of the committee reviewed by this court (Bus. & Prof. Code, § 6066).

The code specifically provides (§ 6064.1) that "[n]o person who advocates the overthrow of the Government of the United States or of this State by force, violence, or other unconstitutional means, shall be certified . . . for admission. . . ."

In October, 1953, petitioner took and passed the written bar examination. Shortly before that examination, and on several later occasions, hearings were conducted by a subcommittee and the full Committee of Bar Examiners.

An ex-Communist testified that petitioner had attended meetings of a Communist Party unit in 1941. Petitioner offered much evidence of his satisfactory service in the Army during World War II, and of his good character and loyalty. The evidence of these hearings is reviewed in some detail in the several opinions in *Konigsberg* v. *State Bar*, 353 U.S. 252 [77 S.Ct. 722, 1 L.Ed.2d 810]. Petitioner denied that he advocated overthrow of the government, but refused to answer any questions of committee members as to his membership in the Communist Party, asserting that such inquiries infringed rights guaranteed him by the First and Fourteenth Amendments to the Constitution of the United States.

The committee, by letter of May 17, 1954, advised petitioner that his application was denied on grounds that he had not sustained his burden of establishing that he (1) possessed the good moral character required by section 6060, subdivision (c), of the code, or (2) did not advocate unlawful overthrow of the government, the showing required by section 6064.1.

Petitioner thereupon sought review by this court. His petition was denied April 20, 1955, without opinion, by a divided court. The United States Supreme Court granted certiorari. On May 6, 1957, that court, with three justices dissenting and one not participating, reversed and remanded the matter to this court "for further proceedings not inconsistent with this opinion" (*Konigsberg* v. *State Bar, supra,* 353 U.S. 252).

In doing so, the United States Supreme Court held (p. 273) that "there is no evidence in the record which rationally justifies a finding that Konigsberg failed to establish his good

moral character or failed to show that he did not advocate forceful overthrow of the Government."

That court specifically pointed out (p. 259) that Konigsberg "was not denied admission to the California Bar simply because he refused to answer questions," and noted that he had not been told that he would be barred "just because he refused to answer relevant inquiries or because he was obstructing the Committee." In this connection it was said (p. 261) that "Serious questions of elemental fairness would be raised if the Committee had excluded Konigsberg simply because he failed to answer questions without first explicitly warning him that he could be barred for this reason alone. . . ."

The court stated (353 U.S. at pp. 261-262) that "If it were possible for us to say that the . . . [committee] had barred Konigsberg solely because of his refusal to respond to its inquiries into his political associations and his opinions about matters of public interest, then we would be compelled to decide far-reaching and complex questions relating to freedom of speech, press and assembly. There is no justification for our straining to reach these difficult problems when the . . . [committee] itself has not seen fit, at any time, to base its exclusion of Konigsberg on his failure to answer. If and when a State makes failure to answer a question an independent ground for exclusion from the Bar, then this Court, as the cases arise, will have to determine whether the exclusion is constitutionally permissible. We do not mean to intimate any view on that problem here nor do we mean to approve or disapprove Konigsberg's refusal to answer the particular questions asked him."

Following the remand, this court vacated its prior order denying the petition for review and referred the entire matter, including the application for admission to the bar filed with us by petitioner after the decision of the United States Supreme Court, to the Committee of Bar Examiners for further proceedings. The committee conducted a hearing September 21, 1957.

At this hearing, the records of all previous hearings were incorporated by stipulation as part of the record, petitioner and a witness called by him were examined, and petitioner introduced letters recommending him as to character and loyalty. No evidence additional to that received in the 1953-1954 hearings was offered as reflecting on petitioner's loyalty or to show his advocacy of overthrow of the government. Thus a finding that he was not of good moral character or that he advocated overthrow of the government would be inconsistent

with the decision of the United States Supreme Court upon the previous record.

At the 1957 hearing, however, the committee did fully advise petitioner and his counsel that his refusal to answer material questions put to him by it would obstruct its investigation of his qualifications to practice law, with the result that the committee would not be able to certify him for admission. It was made clear to him that questions concerning membership in the Communist Party were deemed material. Nonetheless, petitioner refused to answer any and all questions put to him by the committee concerning either past or present membership in or affiliation with the Communist Party. The committee then found that Konigsberg had refused to answer its questions as to his membership in or affiliation with the Communist Party, that these questions were material to a proper determination of his qualifications, that his refusal to answer had obstructed the investigation which the statute requires, and that because of this refusal the committee is unable to certify him for admission.

It is this action which petitioner seeks to have reviewed. It differs materially from that of 1954. The committee action now before us contains no findings or conclusion that petitioner had failed to establish either his good moral character or his abstention from advocacy of overthrow of the government.

Here it is the refusal to answer material questions which is the basis for denial of certification. Petitioner's refusal to answer is conceded. The issue is whether the questions are material. We think their materiality is clear. The committee is enjoined against certifying for admission to practice any person who "advocates the overthrow of the Government of the United States or of this State by force, violence, or other unconstitutional means." (Bus. & Prof. Code, § 6064.1.) This provision clearly requires the committee to inquire as to such advocacy. The Congress (68 Stat. 775; 50 U.S.C. § 841) and the California Legislature (Gov. Code, § 1027.5) have declared that the Communist Party does advocate such overthrow. It follows that inquiry as to membership in that party is relevant and material in determining whether the proscribed advocacy exists. Petitioner refused to answer questions as to such membership at periods after the statutory proscription and after the legislative declarations of the purpose of the Communist Party. As we have noted, he persisted in his refusal after being warned that such conduct would be deemed to require denial of his certification by the committee.

We are unable to distinguish this situation from that presented in *Beilan* v. *Board of Public Education*, 357 U.S. 399 [78 S.Ct. 1317, 1324, 2 L.Ed.2d 1414, 1433]. There a school teacher refused to answer questions as to his loyalty. This refusal was made the basis for a finding of "incompetency." There, as here, there was no finding that the individual was in fact disloyal, but merely a finding that his refusal to answer questions pertinent to his loyalty revealed a lack of candor which constituted unfitness. Our case is somewhat stronger in that here a statute specifically requires the committee to certify that petitioner does not advocate overthrow of the government, and the question as to party membership bears upon that issue. In *Beilan*, as here, there was no rule specifically providing that the failure to answer would be deemed ground for adverse action, but here, as there, the investigating authority gave clear warning that such a result would follow.

In its previous decision in this case, the United States Supreme Court held only that the evidence was insufficient to sustain a finding that petitioner is not of good moral character. The present record contains no additional evidence on that subject. However, the refusal to certify for admission is, on the present record, based wholly upon his refusal to answer pertinent questions. This ground was specifically left open in the earlier decision of that court and subsequent decisions have recognized this fact. (*Beilan* v. *Board of Public Education, supra,* p. 409; *Lerner* v. *Casey,* 357 U.S. 468, 478 [78 S.Ct. 1311, 1324, 2 L.Ed.2d 1423, 1433].)

Determination whether petitioner was a member of the party which has been legislatively determined to advocate overthrow of the government was blocked by his refusal to answer. Such refusal likewise effectively prevented the committee from reaching the question whether, if he were such a member, his membership was knowing or innocent. The committee's refusal to recommend him for admission was based upon his refusal to answer inquiries about his relevant activities—not upon those activities themselves. Thus its refusal is fully justified under the rule of *Beilan*, which disposes of his claim that his constitutional rights have been infringed.

Petitioner does not question the constitutionality of the code section which prohibits certification of one who advocates unlawful overthrow of the government, nor of the federal and state legislative declarations that the Communist Party seeks such overthrow. Implicit in the statutory provi-

sion for review of the committee's refusal to certify an applicant is the power of this court to admit one not so certified. But to admit applicants who refuse to answer the committee's questions upon these subjects would nullify the concededly valid legislative direction to the committee. Such a rule would effectively stifle committee inquiry upon issues legislatively declared to be relevant to that issue. We cannot in good conscience deny the committee the right to inquire into a matter as to which it must certify. Whether the members of this court consider such a statute effective, practical or wise is irrelevant. We do not act in a legislative capacity. Rather, we recognize and enforce legislation which is valid.

We adopt and approve the findings of the committee stated in the 1957 report. The petition for review and the application for admission to the bar are denied.

Gibson, C. J., deeming himself disqualified, did not participate.

Draper, J., sat pro tempore* in place of the Chief Justice.

White, J., not having been a member of the court at the time of oral argument, did not participate.

TRAYNOR, Acting C. J.—I dissent.

The United States Supreme Court has determined that Konigsberg was denied due process of law and equal protection of the laws on the ground that "the evidence does not rationally support the only two grounds upon which the Committee relied in rejecting his application for admission to the California Bar." (*Konigsberg* v. *State Bar*, 353 U.S. 252, 262 [77 S.Ct. 722, 1 L.Ed.2d 810].) In its words, "there is no evidence in the record which rationally justifies a finding that Konigsberg failed to establish his good moral character or failed to show that he did not advocate forceful overthrow of the Government. Without some authentic reliable evidence of unlawful or immoral actions reflecting adversely upon him, it is difficult to comprehend why the State Bar Committee rejected a man of Konigsberg's background and character as morally unfit to practice law." (353 U.S. at 273.)

It declined to determine whether Konigsberg could be ex-

*Assigned by Acting Chairman of Judicial Council.

cluded from practice solely because of his refusal to answer questions, stating:

"There is nothing in the California statutes, the California decisions, or even in the Rules of the Bar Committee, which has been called to our attention, that suggests that failure to answer a Bar Examiner's inquiry is, *ipso facto,* a basis for excluding an applicant from the Bar, irrespective of how overwhelming is his showing of good character or loyalty or how flimsy are the suspicions of the Bar Examiners. Serious questions of elemental fairness would be raised if the Committee had excluded Konigsberg simply because he failed to answer questions without first explicitly warning him that he could be barred for this reason alone, even though his moral character and loyalty were unimpeachable, and then giving him a chance to comply. In our opinion, there is nothing in the record which indicates that the Committee, in a matter of such grave importance to Konigsberg, applied a brand new exclusionary rule to his application—all without telling him that it was doing so.

"If it were possible for us to say that the Board had barred Konigsberg solely because of his refusal to respond to its inquiries into his political associations and his opinions about matters of public interest, then we would be compelled to decide far-reaching and complex questions relating to freedom of speech, press and assembly. There is no justification for our straining to reach these difficult problems when the Board itself has not seen fit, at any time, to base its exclusion of Konigsberg on his failure to answer. If and when a State makes failure to answer a question an independent ground for exclusion from the Bar, then this Court, as the cases arise, will have to determine whether the exclusion is constitutionally permissible. We do not mean to intimate any view on that problem here nor do we mean to approve or disapprove Konigsberg's refusal to answer the particular questions asked him." (353 U.S. at 260, 262, footnotes omitted.)

The United States Supreme Court reversed the judgment of this court and remanded the case "for further proceedings not inconsistent with this opinion." (353 U.S. at 274.) In view of the questions expressly left undecided and the court's remand, it is my opinion that this court is not foreclosed by the United States Supreme Court's decision in this case from adopting and applying to Konigsberg a rule making

failure to answer relevant questions with respect to his qualifications an independent ground for exclusion.

An applicant ordinarily has the burden of establishing his qualifications to practice law, and if he refuses to answer questions relevant to his qualifications, it is my opinion that this court is justified in denying him admission. Given the congressional and state legislative findings with regard to the Communist Party and the adjudications of guilt of its leaders of criminal advocacy, a question as to present or past membership in that party is relevant to the issue of possible criminal advocacy and hence to the applicant's qualifications.

Whatever its relevancy in a particular context, however, it is an extraordinary variant of the usual inquiry into crime, for the attendant burden of proof upon any one under question poses the immediate threat of prior restraint upon the free speech of all applicants. The possibility of inquiry into their speech, the heavy burden upon them to establish its innocence, and the evil repercussions of inquiry despite innocence, would constrain them to speak their minds so noncommittally that no one could ever mistake their innocuous words for advocacy. This grave danger to freedom of speech could be averted without loss to legitimate investigation by shifting the burden to the examiners. Confronted with a prima facie case, an applicant would then be obliged to rebut it.

Such a procedure is logically dictated by *Speiser* v. *Randall,* 357 U.S. 513 [78 S.Ct. 1332, 1352, 2 L.Ed.2d 1460]. The court there assumed that the state could deny a tax exemption to one whose advocacy of the unlawful overthrow of the government was such that it could be punished as a crime. Mindful of the risks to free speech, however, it took care to hold that the state could not compel the taxpayer to prove his right to an exemption and that therefore an oath as to his innocence of unlawful advocacy could not be required. There may be differences of degree in the public interest in the fitness of the applicants for tax exemption and for admission to the Bar. Even though the state may have more at stake in the latter situation, it is not therefore freer to endanger free speech needlessly.

Inquiry on the issue of advocacy of the unlawful overthrow of the government is a greedy camel; it does not easily take its leave. It has a way of moving on into the domain of lawful economic and political belief, speech, and activity. It bears noting that such advocacy, whether it carries crimi-

nal or civil sanctions, is unlike crimes whose elements readily set them apart from legitimate activity. (*Cf., Dennis* v. *United States*, 341 U.S. 494 [71 S.Ct. 857, 95 L.Ed. 1137], with *Yates* v. *United States*, 354 U.S. 298 [77 S.Ct. 1064, 1 L.Ed.2d 1356].) It also bears noting that such advocacy is not invariably associated with even active membership in the Communist Party. (*Yates* v. *United States, supra.*)

Such considerations as these may have led to the result in *Speiser* v. *Randall, supra,* 357 U.S. 513. In contrast an applicant for public employment can be required to state whether or not he is or was a member of the Communist Party, as a condition of his employment. (*Lerner* v. *Casey,* 357 U.S. 468 [78 S.Ct. 1311, 2 L.Ed.2d 1423] ; *Beilan* v. *Board of Public Education,* 357 U.S. 399 [78 S.Ct. 1317, 1324, 2 L.Ed.2d 1414, 1433] ; *Steinmetz* v. *California State Board of Education,* 44 Cal.2d 816, 823 [285 P.2d 617] ; *Pockman* v. *Leonard,* 39 Cal.2d 676, 685-687 [249 P.2d 267].) Since an attorney is neither a public employee nor a taxpayer seeking an exemption, we do not know how the United States Supreme Court would resolve the constitutional issue here. Still, it has emphasized the importance of an independent Bar, and it has declared that petitioner's insistence on a constitutional right not to answer the questions here involved was not frivolous. (*Konigsberg* v. *State Bar,* 353 U.S. 252, 270, 273 [77 S.Ct. 722, 1 L.Ed.2d 810].)

We need not resolve the constitutional question, for the Legislature has not directed that section 6064.1 of the Business and Professions Code* be enforced by compelling applicants to answer all questions relevant to the proscribed advocacy, and significantly, it has not required declarations of nonadvocacy from members of the Bar. It rests solely with this court, in its supervision of admissions to the Bar, to determine whether petitioner must answer the questions in issue. The question is not whether the Legislature might constitutionally impose such requirements but whether this court should impose them. There is no good reason for the court to do so, particularly when the Legislature has made no attempt to impose them on practicing attorneys.

The United States Supreme Court has determined that Konigsberg established his good moral character and that

---

*"No person who advocates the overthrow of the Government of the United States or of this State by force, violence, or other unconstitutional means, shall be certified to the Supreme Court for admission and a license to practice law."

he did not advocate unlawful overthrow of the government. In the subsequent hearing there was no additional evidence adverse to Konigsberg. The committee did no more than make clear to him that his failure to answer would be an independent ground for not certifying him to this court. Konigsberg chose to stand on his constitutional objections, and as the United States Supreme Court pointed out, there is "nothing in the record which indicates that his position was not taken in good faith." (353 U.S. at 270.) If the committee had evidence that would support a finding of unlawful advocacy, it could compel Konigsberg to disclose political statements and associations in rebuttal or forego admission to the Bar. As the United States Supreme Court held, the committee made no prima facie case against Konigsberg, and we are bound by that holding. I would therefore grant the petition of Konigsberg and admit him to the Bar of this state.

PETERS, J.—I dissent.

The majority opinion disregards the law of this case as already established by the United States Supreme Court. (*Konigsberg* v. *State Bar*, 353 U.S. 252 [77 S.Ct. 722, 1 L.Ed. 2d 810].) It misconstrues the high court's opinion, and in particular misconstrues the legal effect of the order of that court remanding the case "for further proceedings not inconsistent with this opinion." (*Konigsberg* v. *State Bar*, 353 U.S. at p. 274.) The result is that, in my opinion, applicant has been denied due process and equal protection.

The only issues before The State Bar in its first proceeding were whether the applicant was of good moral character and whether he advocated the forceful overthrow of the government of the United States. The burden was upon applicant to establish those facts. Lengthy hearings were held. At these hearings applicant furnished overwhelming evidence of his good moral character and of the fact that he did not advocate and had never advocated the forceful overthrow of the government. He refused to answer any question as to his political affiliations. The State Bar refused to certify the applicant for admission on the ground that he had failed to sustain his burden on the two issues involved. The applicant sought review by this court. The petition was denied without opinion. The United States Supreme Court granted certiorari. That court then reversed this court and The State Bar and held that the applicant had sustained his

burden of proof on the two key issues, and that on the showing made the applicant should have been certified for admission. The case was remanded "for further proceedings not inconsistent with this opinion." (*Konigsberg* v. *State Bar*, 353 U.S. at p. 274.)

Following this remand this court, by a divided vote, instead of certifying the applicant, vacated its prior order and referred the case back to The State Bar for further proceedings. No showing was then or later made that any new evidence or facts had been discovered. The State Bar then held a so-called hearing. It was stipulated that the entire prior record should be introduced. The State Bar had admittedly hired an investigator to check on the applicant while the case had been pending in the courts, but it did not produce him or offer any evidence at all. The petitioner produced additional evidence in further support of his contentions that he was of good moral character and a loyal citizen. No question was asked him that had not been asked on the prior hearing, and no answer was given that had not already been given. The only difference between the two hearings was that at the last one petitioner was warned that his failure to answer questions as to his political affiliations could be construed as lack of cooperation that would justify a denial of his application.

Thus petitioner, in the first hearing, presented overwhelming evidence that he was of good moral character and a loyal citizen. The highest court in the land so held. Then, on precisely that same record, the record that the high court had held demonstrated that the applicant had sustained his burden as a matter of law, the majority of this court have held that The State Bar properly denied certification because this time applicant was warned that the failure to answer certain questions would be construed as lack of cooperation. How many times does the issue of whether applicant possesses a good moral character and is a loyal citizen have to be tried? Those were the issues presented. Having sustained his burden as to those issues, on what rational theory can it be held that The State Bar, at this late date, with no new evidence, can offer a new and different excuse for denying certification? When does this litigation come to an end? I had always thought, until I read the majority opinion in this case, that our system of law was predicated on the fundamental theory that, when issues between litigants have once been determined, they can-

not be relitigated. I had always thought that litigants were required to raise all relevant issues in one proceeding. I had assumed that parties cannot litigate their case piecemeal.

The majority purport to find sanction for this violation of fundamental principles in the order of the United States Supreme Court, heretofore quoted, remanding the case ''for further proceedings not inconsistent with this opinion'' (*Konigsberg* v. *State Bar,* 353 U.S. at p. 274), and in several sentences contained in the opinion. The majority do not quote all the relevant language. At page 259 of the high court opinion appears the following:

''In Konigsberg's petition for review to the State Supreme Court there is no suggestion that the Committee had excluded him merely for failing to respond to its inquiries. Nor did the Committee in its answer indicate that this was the basis for its action. After responding to Konigsberg's allegations, the Bar Committee set forth a defense of its action which in substance repeated the reasons it had given Konigsberg in the formal notice of denial for rejecting his application.

''There is nothing in the California statutes, the California decisions, or even in the Rules of the Bar Committee, which has been called to our attention, [and there is still nothing in such statutes, decisions or rules] that suggests that failure to answer a Bar Examiner's inquiry is *ipso facto,* a basis for excluding an applicant from the Bar, irrespective of how overwhelming is his showing of good character or loyalty or how flimsy are the suspicions of the Bar Examiners. Serious questions of elemental fairness would be raised if the Committee had excluded Konigsberg simply because he failed to answer questions without first explicitly warning him that he could be barred for this reason alone, even though his moral character and loyalty were unimpeachable, and then giving him a chance to comply. In our opinion, there is nothing in the record which indicates that the Committee, in a matter of such grave importance to Konigsberg, applied a brand new exclusionary rule to his application—all without telling him that it was doing so.

''If it were possible for us to say that the Board had barred Konigsberg solely because of his refusal to respond to its inquiries into his political associations and his opinions about matters of public interest, then we would be compelled to decide far-reaching and complex questions relating to freedom of speech, press and assembly. There is no justification

for our straining to reach these difficult problems when the Board itself has not seen fit, at any time, to base its exclusion of Konigsberg on his failure to answer. If and when a State makes failure to answer a question an independent ground for exclusion from the Bar, then this Court, as the cases arise, will have to determine whether the exclusion is constitutionally permissible. We do not mean to intimate any view on that problem here nor do we mean to approve or disapprove Konigsberg's refusal to answer the particular questions asked him.''

The majority opinion interprets the remanding order and the above-quoted portion of the opinion as a direction, or at least an authorization, to return the proceeding to The State Bar to permit it to refuse certification solely on the ground that Konigsberg had refused to cooperate by refusing to answer questions about his political affiliations. This is not a correct interpretation of the remanding order. Obviously, what the Supreme Court meant by the quotation, *supra,* is that California has never adopted a statute or a rule making failure to answer, *ipso facto,* a ground for refusal to certify, and that The State Bar could not properly contend that on the record there involved such was a valid ground for refusal to certify. Without such a statute or rule the point could not be urged. Certainly the Supreme Court could not have meant that without a statute or rule the Board of Bar Examiners could create a ''rule'' simply by warning Konigsberg that the effect of refusal to answer would be to cause the board to refuse his certification. Such a warning, coming four years after Konigsberg first appeared before the committee, does not comply with rules of ''elemental fairness'' as required by the Supreme Court of the United States.

Rules for admission to practice law are not to be adopted in this cavalier fashion. The only rules passed by the Legislature provide that the applicant must be of good moral character, and must not advocate the forceful overthrow. There is no rule about failing to answer. If California is to adopt a new rule relating to failure to answer questions, such rule or statute should be adopted in the manner rules and statutes are normally adopted. Here the so-called ''rule'' was adopted in the middle of a proceeding as an afterthought simply to justify the actions of the Bar Committee in refusing to certify Konigsberg for admission. To sanction such a pro-

cedure is not only unfair but, in my opinion, a denial of due process and equal protection.

After the careful review of the evidence made by the United States Supreme Court, and after holding that such evidence did not justify the refusal to certify, when the high court remanded the case "for further proceedings not inconsistent with this opinion" it meant, and must have meant, that this court was to grant the petition of Konigsberg, unless new facts relating to character or loyalty were produced. Any other action was necessarily inconsistent with the opinion of the Supreme Court of the United States.

Of course, had The State Bar made a showing that after the first hearings and while the case was on appeal it had discovered new evidence that Konigsberg was not of good moral character and not a loyal citizen, the case could have been remanded to The State Bar to hear and consider that evidence. But no such showing was made and no such evidence produced.

Thus the majority opinion, in my view, violates the remand order of the United States Supreme Court.

In addition, the majority opinion also violates the law of the case as established by the high court. As already pointed out, all of the questions Konigsberg refused to answer were addressed to the inquiry as to whether he was or had been a member of the Communist Party. The only legitimate purpose behind those questions was to ascertain whether Konigsberg advocated or had ever advocated the forceful overthrow of the government of the United States. Konigsberg answered, and answered frankly, every question directed to that subject. The State Bar produced no evidence to the contrary. In discussing the answers given by Konigsberg, the United States Supreme Court (*Konigsberg* v. *State Bar,* 353 U.S. 252, at p. 271) had this to say: "Konigsberg repeatedly testified under oath before the Committee [and he gave similar answers at the last hearing] that he did not believe in nor advocate the overthrow of any government in this country by any unconstitutional means. For example, in response to one question as to whether he advocated overthrowing the Government, he emphatically declared: 'I answer specifically I do not, I never did or never will.' No witness testified to the contrary. As a matter of fact, many of the witnesses gave testimony which was utterly inconsistent with the premise that he was disloyal. And Konigsberg told the Committee that he was

ready at any time to take an oath to uphold the Constitution of the United States and the Constitution of California."[1]

There is no evidence that Konigsberg now or at any other time has ever advocated the forceful overthrow, or ever belonged to any association that he knew so advocated. The evidence is all to the contrary. The United States Supreme Court after reviewing the evidence then before it, and no other evidence has been produced on the issue, had this to say (*Konigsberg* v. *State Bar*, 353 U.S. 252, at p. 273): "We recognize the importance of leaving States free to select their own bars, but it is equally important that the State not exercise this power in an arbitrary or discriminatory manner nor in such way as to impinge on the freedom of political expression or association. A bar composed of lawyers of good character is a worthy objective but it is unnecessary to sacrifice vital freedoms in order to obtain that goal. It is also important both to society and the bar itself that lawyers be unintimidated —free to think, speak, and act as members of an Independent Bar. In this case we are compelled to conclude that there is *no evidence in the record which rationally justifies a finding that Konigsberg failed to establish his good moral character or failed to show that he did not advocate forceful overthrow of the Government.* [Italics added.] Without some authentic reliable evidence of unlawful or immoral actions reflecting adversely upon him, it is difficult to comprehend why the State Bar Committee rejected a man of Konigsberg's background and character as morally unfit to practice law. As we said before, the mere fact of Konigsberg's past membership in the Communist Party, if true, without anything more, is not an adequate basis for concluding that he is disloyal or a person of bad character. A lifetime of good citizenship is worth very little if it is so frail that it cannot withstand the suspicions which apparently were the basis for the Committee's action."

It must be remembered that at the various hearings Konigsberg produced evidence of 54 persons who testified in detail about almost every phase of his adult life. Not one word or one bit of evidence was produced to show that Konigsberg had ever committed a wrongful, improper or disloyal act. The evidence was all to the contrary. Applicant himself testified that he did not and never had advocated the forceful

---

[1]This is the oath required by California law—Business and Professions Code, section 6067.

overthrow. The United States Supreme Court was much impressed by this testimony. An examination of that court's opinion will demonstrate to a certainty that it held that, on the record before it, and the present record is stronger in this respect, Konigsberg had affirmatively demonstrated that he possessed a good moral character and was a loyal citizen. This is the law of this case.

The high court stated that the issue before it was "Does the evidence in the record support any reasonable doubts about Konigsberg's good character or his loyalty to the Governments of the State and Nation? . . .

"Konigsberg claims that he established his good moral character by overwhelming evidence and carried the burden of proving that he does not advocate overthrow of the Government. He contends here, as he did in the California court, that there is no evidence in the record which rationally supports a finding of doubt about his character or loyalty. . . . If this is true, California's refusal to admit him is a denial of due process and of equal protection of the laws because both arbitrary and discriminatory. After examination of the record, we are compelled to agree with Konigsberg that the evidence does not rationally support the only two grounds upon which the Committee relied in rejecting his application . . . " (353 U.S. at p. 262.)

Then, after referring to the evidence produced by Konigsberg on the issue of his character, the court stated (353 U.S. at p. 265) : "Other witnesses testified to Konigsberg's belief in democracy and devotion to democratic ideas, his principled convictions, his honesty and integrity, his conscientiousness and competence in his work, his concern and affection for his wife and children and his loyalty to the country. These, of course, have traditionally been the kind of qualities that make up good moral character. The significance of the statements made by these witnesses about Konigsberg is enhanced by the fact that they had known him as an adult while he was employed in responsible professional positions. Even more significant, not a single person has testified that Konigsberg's moral character was bad or questionable in any way."

After referring to evidence of Konigsberg's background the court refers to this evidence of character as "Konigsberg's forceful showing of good moral character" and comments on the fact that "there is no evidence that he has ever been convicted of any crime or has ever done anything base or depraved" the high court refers to certain arguments of The

State Bar and concludes "When these items are analyzed, we believe it cannot rationally be said that they support substantial doubts about Konigsberg's moral fitness to practice law." (353 U.S. at p. 266.) This is the law of this case.

Then, after analyzing all the evidence on this issue relied upon by The State Bar, the court stated: "On the record before us, it is our judgment that the inferences of bad moral character which the Committee attempted to draw from Konigsberg's refusal to answer questions about his political affiliations and opinions are unwarranted." (353 U.S. at p. 270.)

After discussing at length the evidence that The State Bar relied upon to show possible advocacy of forceful overthrow, the United States Supreme Court concluded with the statement already quoted but which bears repetition: "In this case we are compelled to conclude that there is no evidence in the record which rationally justifies a finding that Konigsberg failed to establish his good moral character or failed to show that he did not advocate forceful overthrow of the Government. . . . it is difficult to comprehend why the State Bar Committee rejected a man of Konigsberg's background and character as morally unfit to practice law. . . . A lifetime of good citizenship is worth very little if it is so frail that it cannot withstand the suspicions which apparently were the basis for the Committee's action." (353 U.S. at p. 273.) This, too, is the law of this case.

Thus it is the law of this case that the record before the Supreme Court of the United States established, as a matter of law, that applicant, without conflict, proved that he possessed a good moral character and was a loyal citizen. The present record is even stronger in this respect. If it be taken as established as a matter of law that applicant possesses such a character and is loyal, the two statutory requirements involved, of what relevancy is it that he refused to answer questions as to his political affiliations? The holding that mere refusal to answer the questions justified refusing certification, under the circumstances here, necessarily violates the law of the case as established by the high court.

Stated another way, if the record before the high court established these facts as a matter of law, the record now before this court also, necessarily, shows these facts as a matter of law. Therefore, it is a necessary conclusion from the majority opinion that although Konigsberg affirmatively

sustained the burden of showing by very substantial and uncontradicted evidence that he possesses a good moral character and is a loyal citizen, and although the record will support no other conclusion, he may be denied admission solely because he refused to cooperate by answering questions about his political affiliations. Thus, although the petitioner has affirmatively sustained his burden of proof, and there is no evidence or inference from the evidence to the contrary, the majority hold that he may be denied relief solely because he refused to answer questions as to his political affiliations.

For these reasons, and also for the reasons stated in the dissenting opinion of Mr. Justice Traynor, I would grant the petition of Konigsberg and admit him to the bar of this state.

Petitioner's application for a rehearing was denied November 10, 1959. Gibson, C. J., deeming himself disqualified, did not participate therein. Draper, J., sat pro tempore* in place of the Chief Justice. Traynor, Acting C. J., and Peters, J., were of the opinion that the petition should be granted. ·

*Assigned by Acting Chairman of Judicial Council.