COOK COUNTY COLLEGE TEACHERS UNION, LOCAL 1600, IFT, AFT, AFL-CIO, Plaintiff-Appellant, v. BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 508, COUNTY OF COOK, Defendant-Appellee.

First District (2nd Division)   No. 84—1370

Opinion filed June 28, 1985.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for appellant.

George L. Siegel, of Arvey, Hodes, Costello & Burman, of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff Cook County College Teachers Union, Local 1600 (hereinafter the union), filed a declaratory judgment action against defendant Board of Trustees of Community College District No. 508 (hereinafter the board), alleging that a question on an outside employment disclosure form violated teachers' right to privacy. After the pleadings were filed, both sides filed motions for summary judgment. The union's motion was denied, and the board's was granted. The court ruled that the teachers were obligated to answer the question at issue. The union appeals from the order.

We are asked to determine whether full-time college faculty mem-

bers, whose contracts of employment provide that they shall not engage in full-time outside employment, and who have been directed to complete a form requesting information about their outside employment, may refuse to answer a question that requires disclosure of their earnings from outside employment. The question allegedly violates their right to privacy or confidentiality guaranteed by the Bill of Rights of the United States Constitution and article I, section 6, of the 1970 Illinois Constitution.

We affirm.

The pleadings disclose the following facts. Plaintiff is a labor union that the board has recognized as the exclusive bargaining agent for full-time college teachers of the City Colleges of Chicago since 1967. Defendant is a body politic and corporate that was created under the Public Community College Act (Ill. Rev. Stat. 1983, ch. 122, par. 101—1 *et seq.*). The parties had entered into a collective bargaining agreement that contained the following provision:

> "Outside employment. A full-time position in the Colleges is accepted with the understanding that the faculty member will not continue, or at a future date accept, a concurrent full-time position or positions equal to a full-time position with any other employer or employers while he is teaching full-time in the Colleges."

The identical provision is also contained in the individual employment contracts of each full-time faculty member.

The board claims that its objectives in prohibiting outside full-time employment are to insure primary loyalty to the City Colleges and to prevent a decrease in the quality of teaching.

On October 28, 1983, the board submitted to each teacher who had previously indicated outside employment a letter and form, entitled "Supplemental Form for Outside Employment." The information requested relates solely to outside employment. The first six questions requested the following information:

(1) Whether employed by another or self-employed;

(2) Nature of employment; title;

(3) Name of firm, address, and phone number;

(4) Date of employment;

(5) Work schedule: days per week, hours per day, hours per week, daily starting time, daily quitting time;

(6) Benefits received: wages, fees, health and life insurance, vacation, holidays, pension, profit sharing, honorariums, expenses, tenure, other.

Question No. 7, the question at issue here, states: "What were

your total earnings from all outside employment as indicated above for the past income tax year?" The form defines outside employment as including any and all forms of remunerated activity, including consultation and research. The board directed each faculty member to complete the form and to certify its veracity. A failure to complete the form subjects the teacher to disciplinary action.

Prior to distribution, the board submitted the form to the union. The union's president requested some changes, which were made by the parties and approved by the union president. However, after the form was distributed, some teachers objected to question No. 7, and the union then directed its members not to answer the question. As of November 30, 1983, 219 teachers answered all questions, and 213 answered all but No. 7.

On November 21, 1983, the union filed its complaint for declaratory judgment, alleging that the information requested in question No. 7 was an unconstitutional infringement on its members' right to privacy. On May 2, 1984, the trial court granted the board's motion for summary judgment. It ordered that "the faculty members shall answer question No. 7 relating to earnings from outside employment, provided that a faculty member may elect to submit such answer in a sealed envelope which may be opened by the College administration upon notice to the faculty member." Plaintiff then filed its timely appeal.

## I

We note at the outset that faculty members who do not have outside employment are not required to complete the form. From a thorough review of the record and the arguments of counsel, we conclude that faculty members are not required to disclose investment income. Thus, the only income to be disclosed is that earned through outside employment.

The limits on outside employment were set by the collective bargaining agreement, which was negotiated by the union. Under that agreement, the teachers promised that teaching would be their primary employment, and this promise was corroborated by the individual employment contracts executed between each teacher and the board.

In order to monitor this contract provision, the board and the union president, after negotiation, agreed to the disclosure form. Only after some teachers objected to question No. 7 did the union instruct its members not to answer. By answering questions 1 through 6, however, a faculty member would supply essentially all of the information

required by the board except the total amount of income earned through outside employment. The board, through some investigation, could reasonably calculate the amount of income earned. This could be done through knowledge of prevailing wage scales, customary salaries and fees, and advertisements by other employers. Having given the board all of this information, one can hardly assert that there is a great privacy or confidentiality interest to protect.

Question No. 7 asks, "What were your total earnings from all outside employment *as indicated above* for the past income tax year?" (Emphasis added.) The question does not ask for income tax returns but merely accepts the income tax year as the applicable time frame. A statement of earnings from "outside employment" merely calls for a mathematical computation of information that is already disclosed in questions 1 through 6. Thus, answering question No. 7 is merely a recapitulation of the information provided previously. Surely, the board's request does not reach the magnitude of a breach of constitutional rights as alleged by the union.

■ Constitutional rights can be waived. (*People v. Del Vecchio* (1985), 105 Ill. 2d 414, 433.) The union, by agreeing to a restriction against full-time outside employment, waived its constitutional rights to privacy and confidentiality to the extent required by answering question No. 7. Moreover, the board's objectives in trying to insure loyalty in its employees and quality in its services is a valid public purpose, and the disclosure form is a reasonable means of implementing that purpose.

Of course, public policy must be balanced against the right to privacy. The right to privacy, however, is not absolute. (*Illinois State Employees Association v. Walker* (1974), 57 Ill. 2d 512, 522-24, 315 N.E.2d 9, *cert. denied* (1974), 419 U.S. 1058, 42 L. Ed. 2d 656, 95 S. Ct. 642.) Here, we must balance the teachers' right to privacy against the rights of taxpayers and students, as represented by the board, to a quality education. Because the limits on their outside employment were known and voluntarily agreed to by the union and each faculty member, the board can reasonably require disclosure that is sufficient to verify outside employment.

■ Teachers do not have a fundamental right to public employment. (*Massachusetts Board of Retirement v. Murgia* (1976), 427 U.S. 307, 313, 49 L. Ed. 2d 520, 524-25, 96 S. Ct. 2562, 2566-67.) Public employees are subject to reasonable restrictions on their activities. In *Lerner v. Casey* (1958), 357 U.S. 468, 477-78, 2 L. Ed. 2d 1423, 1431, 78 S. Ct. 1311, 1316, the Supreme Court stated that "a government employee can be required upon pain of dismissal to respond to inquiry

probing into matters relevant to his employment ***.''

Except for *City of Carmel-by-the-Sea v. Young* (1970), 2 Cal. 3d 259, 466 P.2d 225, 85 Cal. Rptr. 1, the union has not cited one case involving financial disclosure in which the balancing of interests was resolved in favor of the individual and against the public body. In *City of Carmel,* a financial disclosure statement was held to be unconstitutional because of vagueness. The Illinois Supreme Court, however, has expressly repudiated *City of Carmel.* (*Stein v. Howlett* (1972), 52 Ill. 2d 570, 578, 289 N.E.2d 631; *Illinois State Employees Association v. Walker* (1974), 57 Ill. 2d 512, 523, 315 N.E.2d 9, *cert. denied* (1974), 419 U.S. 1058, 42 L. Ed. 2d 656, 95 S. Ct. 642.) Furthermore, the California Supreme Court itself later upheld a revised disclosure statement. *County of Nevada v. MacMillen* (1974), 11 Cal. 3d 662, 522 P.2d 1345, 114 Cal. Rptr. 345.

Here, we are not concerned with the disclosure of income tax returns but merely with the disclosure of some information that may be included on an individual tax return. Therefore, cases that have upheld the disclosure of income tax returns are generally applicable to this case.

In *Illinois State Employees Association v. Walker* (1974), 57 Ill. 2d 512, 315 N.E.2d 9, *cert. denied* (1974), 419 U.S. 1058, 42 L. Ed. 2d 656, 95 S. Ct. 642, the supreme court upheld an executive order that required certain State employees to disclose their Federal and State income tax returns. (57 Ill. 2d 512, 515-17.) The court rejected a privacy argument based on *Griswold v. Connecticut* (1965), 381 U.S. 479, 14 L. Ed. 2d 510, 85 S. Ct. 1678, by stating: ''We do not deal in this case with the most intimate relationships of husband and wife ***. We deal rather with a requirement that the financial affairs of persons who are paid by the public and who occupy positions of high public trust be disclosed.'' (57 Ill. 2d 512, 524.) Thus, we also reject the same argument made by the union here.

In addition to disclosures required by the Ethics Act, other Illinois laws require the disclosure of income tax returns. For example, State income tax is based on the adjusted gross income shown on the Federal return. (Ill. Rev. Stat. 1983, ch. 120, par. 2—203.) The Code of Civil Procedure provides that a judgment creditor may initiate supplemental proceedings to discover a debtor's assets. Ill. Rev. Stat. 1983, ch. 110, par. 2—1402.

On the Federal level, the Sixth Circuit, in *Gross v. University of Tennessee* (6th Cir. 1980), 620 F.2d 109, upheld the dismissal of medical professors who were discharged because they refused to sign an agreement that would have limited their earnings from outside em-

494

ployment. The court said: "The legitimate state interest here is the faculty's devotion to teaching responsibilities and it is reasonable that an outside practice might interfere with this. *** And it is reasonable for the administration to conclude—whether or not it is always true—that an outside practice would interfere with some teaching duties." 620 F.2d 109, 110.

Here, the board, as well as taxpayers and students, have an interest in assuring that teachers devote their energies and resources primarily to teaching. The disclosure form is a reasonable attempt at monitoring that goal, and the union has not demonstrated that the right to privacy of its members should outweigh the public's interest in a quality education for its city college students.

For these reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P.J., and HARTMAN, J., concur.