Jacob Markowitz, J.
Applications under calendar numbers 117 and 104 of the same date are consolidated herein with the application under calendar number 103 and decided together.
Each of the petitioners, by way of an article 78 proceeding, invokes the judicial power to annul his dismissal from the Police Department of the City of New York, to order his reinstatement to the position from which he was discharged and to order the payment of his appropriate interim compensation and, in the case of petitioner Koutnik, to order corollary relief.
The manner and nature of the dismissal of each petitioner is best portrayed by the communication, dated June 25, 1964, which notified each one of his discharge:
Dear Sir:
I have been directed to inform you that you having appeared before the First June, 1964 Grand Jury of the County of New York, on the 25th day of dime, 1964, and having refused to waive immunity from prosecution, as required by Section 1123 of The New York City Charter, The Police Commissioner has ordered that your employment as a member of The Police Department of the City of New York be terminated, and your office vacated.
Very truly yours,
Louis L. Stutman
(Emphasis added.) Chief Clerk
Section 1123 of the New York City Charter provides: “ § 1123. Failure to testify. — If any councilman or other officer or employee of the city shall, after lawful notice or process, wilfully refuse or fail to appear before any court or judge, any legislative committee, or any officer, board or body authorized to con *730 duct any hearing or inquiry, or having appeared shall refuse,to testify or to answer any question regarding the property, government or affairs, of the city or of any county included within its territorial limits,, or regarding the nomination, election, appointment or official conduct of any officer or employee of the city or of any such county, on the ground that his answer would tend to incriminate him, or shall refuse to waive immunity from prosecution on account of any such matter in relation to which he may be asked to testify upon any such hearing or inquiry* Ms term or tenure of office or employment shall-terminate and such office or employment shall be vacant, and he shall not be eligible to election or appointment to any office or employment under the city or any agency.” ,
The aforesaid charter section is the city’s counterpart to the substantially identical provision in section 6 of article I of the Constitution of the State of New York, which prescribes, in pertinent part, that: ££ [No person shall] he compelled in any criminal case to bé a witness against, himself, providing, that any public officer who, upon being called before a grand jury to testify concerning the conduct of his present office * * *
or the performance of his official duties * * * refuses to sign a waiver of immunity against, subsequent criminal prosecution or to answer any relevant question concerning such matters before such grand jury, shall by virtue of such refusal, be disqualified from holding any other public, office or public employment for a period of five years * *. * and shall be removed from his present office by the appropriate authority or shall forfeit his office at the suit of the, attorney-general.”
None of the petitioners denies that, upon his appearance before the Grand Jury on June, 25, 1964 he refused to sign at that time a waiver of immunity from prosecution.,, Each urges, and this is substantiated by the transcript of the interrogation before the Grand Jury, that the Chief Assistant District Attorney would not accept a qualified answer to the question of whether the witness would then sign a limited waiver of immunity and continued in his questioning, until each petitioner answered in the negative and was then excused. Petitioner Gardner’s transcript indicates that he did not want to sign the waiver “ at this time ” — before he could “ get a lawyer to find out more about this proceeding.” Petitioner Smith refused to sign “at this time” —££ until I consult an attorney.” Petitioner Koutnik refused to sign because ££ [m]y lawyer has advised me not to, sign anything.”
The petitioners further justify their claim, that the negative response to the Assistant District Attorney’s critical question *731 did not constitute an“ unfettered exercise of will ”, an informed, intentional refusal to sign the waiver of immunity, by detailing the events leading to their appearances before the Grand Jury. Petitioner Gardner was awakened, after being on duty the preceding night, at approximately 7:00 a.m. on the morning of June 25,1964 and directed to appear forthwith before the Grand Jury. Petitioner Smith was notified at approximately 1:00 a.m. in the morning of June 25, 1964 to appear at 8:30 a.m. at the office of the Deputy Chief Inspector who served petitioner Smith with a subpoena directing his appearance before the Grand Jury at 10:00 a.m. of the same day. Petitioner Koutnik, at approximately 5:30 p.m. on June 24, 1964, was apprehended by police officers who took him to the District Attorney’s office. He was detained there for some three hours, during which time he was served with a subpoena to appear before the Grand Jury the next morning. At approximately 1:00 a.m. on June 25, 1964, a subpoena to appear that morning before the Grand Jury was served upon petitioner Koutnik’s wife who thus accompanied her husband that morning.
None of the petitioners was afforded an opportunity to explain, to clarify or to attempt to justify his conduct or answers before the Grand Jury. Immediate communication, by what appears to be a form letter signed by the Chief Clerk, notified each petitioner of his discharge — a dismissal which bars him permanently from holding office or public employment in the City of New York and disqualifies him from State public office or public employment for five years.
The significance of the denial to petitioners of an opportunity to explain must be viewed within the context of each petitioner’s status as an employee who, under State law, was entitled to tenure and could be dismissed only for “ incompetency or misconduct shown after a hearing upon due notice upon stated charges, and with the right to such policeman to be represented by counsel at such hearing and to a judicial review in accordance with the provisions of article seventy-eight of the civil practice act.” (L. 1940, ch. 834 “ Removal of policemen serving in the competitive class of civil service in the several cities, counties, towns and villages of the state.”) Of critical importance, the aforesaid statute mandates that “ The burden of proving incompetency or misconduct shall be upon the person alleging the same.”
Two basic issues thus emerge for our determination: Does the summary dismissal, without further inquiry, of all who answer in the negative to the request to sign forthwith a waiver of immunity from prosecution, i.e., to sign a waiver of one’s *732 Fifth Amendment rights, constitute a deprivation of substantive due process as an unreasonable, discriminatory condition of public employment? (See Slochower v. Board of Educ., 350 U. S. 551 [1956].) Does the summary dismissal of petitioners without notice and hearing constitute a deprivation of procedural rights? (See L. 1940, ch. 834; Civil Service Law, § 75.)
With these questions, we are once again confronted with one of the paramount legal issues of our times — the constitutional rights of a government employee qua government employee. The problem is a recurring one which, to date, has evoked judicial expression in a veritable host of cases. The determination in each decision has, of necessity, confined itself to the narrow content of its precise fact pattern. Yet, there does emerge from each such pronouncement a concerned awareness of the ever-increasing economic power of government over the life of each member of our society and the concomitant need for the judiciary to safeguard jealously the rights of the individual.
It is rather late in the day to call attention to the burgeoning expansion of .the domain of public employment and government concern with the economic welfare of the individual. Bather must we concentrate our resources to preserve the individual’s personal rights at the very moment that he is becoming increasingly economically dependent upon government.
Mr. Justice Douglas (dissenting in Adler v. Board of Educ., 342 U. S. 485, 508 [1952]) has declared: “ I have not been able to accept the recent doctrine that a citizen who enters the public service can be forced to sacrifice his civil rights.” The majority of the members of the United States Supreme Court have not adopted this view to the degree espoused by Mr. Justice Douglas.
With regard to the matter sub judice, however, the court has branded as unconstitutional, whether by express legislative fiat or judicial interpretation and application, a statute which “ operates to discharge [ipso facto] every city employee who invokes the Fifth Amendment.” (Slochower v. Board of Educ., 350 U. S. 551, 558 [1956], supra.)
Of critical significance, the specific statute tested in Slochower v. Board of Educ. (supra) was the predecessor to section 1123 of the New York City Charter and the city’s counterpart to the pertinent part of section 6 of article I of the New York State Constitution. Although neither the present section of the City Charter nor the New York constitutional provision contains the explicit mandate for automatic discharge which was declared violative of substantive due process, this does not distinguish the former section from its city successor and State counterpart. The United States Supreme Court emphasized the importance *733 of judicial interpretation, specifically noting that, “ The Court of Appeals of New York, however, has authoritatively interpreted § 903 to mean that ‘ the assertion of the privilege against self incrimination is equivalent to a resignation.’ Daniman v. Board of Education, 306 N. Y. 532, 538 ” (p. 554).
Discharge predicated solely and automatically upon the invocation of the Fifth Amendment privilege against self incrimination or the refusal to waive the protective aegis of the amendment violates substantive due process, i.e., an arbitrary and unreasonable discharge. (Slochower v. Board of Higher Educ., supra; see, also, Wieman v. Updegraff, 344 U. S. 183, 190-191 [1952].)
Two cases decided by the United States Supreme Court subsequent to Slochower v. Board of Educ. (supra), one of which involved a New York statute, indicate that discharge may constitutionally be based upon incompetency or misconduct (insubordination) flowing from the individual’s refusal to answer, i.e., lack of candor. (Beilan v. Board of Educ., 357 U. S. 399 [1958]; Lerner v. Casey, 357 U. S. 468 [1958].)
Several aspects of Lerner v. Casey (supra) must be stressed: Under the particular statute there involved, upon petitioner’s refusal to answer, he was given time to reconsider his refusal and to engage counsel; subsequently he appeared by counsel on two occasions, on each of which he adhered to his original position, and then he was suspended and notified thereof and of his right to submit statements or affidavits showing why he should be reinstated; petitioner did not avail himself of the aforesaid opportunity and thereafter was dismissed by a “ resolution which confirmed the previous 1 suspension ’ findings ” (p. 472). Petitioner also failed to pursue his administrative remedy of appealing to and obtaining a hearing before the State Civil Service Commission. The court refused to review the procedural defects urged by petitioner with respect to deprivation of his due process rights (denial of a hearing before dismissal) because the petitioner failed to follow the procedural mandates of the statute. Most critical, the court expressly stated that, ‘1 it seems clear that the discharge here in any event was unlike that in Slochower v. Board of Higher Education, supra, in that, as definitely interpreted by the Court of Appeals, it was not based on the fact that the employee had asserted Fifth Amendment rights ” (p. 477).
The court then added (pp. 478-479):
1 ‘ The issue then reduces to the narrow question whether the conclusion which could otherwise be reached from appellant’s refusal to answer is constitutionally barred because his refusal
*734 was accompanied by the assertion of a Fifth Amendment privilege. We think it does not. The federal privilege against self incrimination was not available to appellant through the Fourteenth Amendment in this state investigation. [Citirig cases.]
“ we are not here concerned with .the protection, as a matter of policy or constitutional requirement, to be accorded persons' who* under similar circumstances * * * validly invoke the federal privilege [citing by comparison, Slochower v. Board of Higher Education, supra] ”.
Lerner v. Casey (357 U. S. 468, supra) was decided in 1958. In 1964 the United States Supreme Court held that ‘ ‘ The Fourteenth Améndment secures against 'state invasion the same privilege that the Fifth Amendment guarantees against Federal infringement — the right of á person to remain silent unless he chooses to speak in the unfettered exercise" of his own will, and to suffer no penalty * 1 * * for such siléncé.” (Malloy v. Hogan, 378 U. S. 1, 8 [1964].)
Logic thus dictates the post-Malloy v. Hogan (supra) applicability to State proceedings of the doctrine enunciated in Slochower v. Board of Educ. (supra) : Automatic dismissal from public employment predicated solely upon brie’s invocation of the Fifth Amendment privilege against self incrimination is proscribed by the United States Constitution. (Paraphrasing Matter of Lerner v. Casey, 2 N Y 2d 355, 372 [1957].)
‘ Mr. Justice Cardozo called “ the protection of the individual against arbitrary action” the Very essence of due process. (Ohio Bell Tel. Co. v. Commission, 301 U. S. 292, 302 [1937].) The United States Supreme Court" branded the summary dismissal of Professor' Slochower as one 'which “ violates due process of law ”. (Slochower v. Board of Educ., 350 U. S. 551, 559.) Within the context of Malloy v. Hogan (supra), the summaty dismissal of each of the petitioners must, too, be déémed violative of each of the three individuals’ due process rights.
This conclusion does not, however, require the court to declare unconstitutional either the subject New "York City Charter provision or section 6 of article I of the New York State Constitution.
In an interpretation expressly approved by the majority of the Court of Appeals (Matter of Lerner v. Casey, 2 N Y 2d 355, 371), the Appellate Division identified the crux of the Slochower v. Board of Educ. case (supra) as, along with two "other factors, “ the failure of the statute to provide an opportunity to explain the reason for refusal to answer ”. This interpretation appears to be rib less" valid today." (See to the sariie effect," Revised Record of 1938 New York State' Constitutional Coriventibri, Vols. III, IV, pp. 2591-2605; People v. O’Dowd, 8 A D 2d 468; *735 note provision for legal proceedings by Attorney-General.)
Although Malloy v. Hogan (supra,) has affected the viability of some of the rationale, with respect to the Fifth Amendment right against self incrimination, of the case upholding the constitutionality of the pertinent part of section 6 of article I of the New York State Constitution (Canteline v. McClellan, 282 N. Y. 166,170 [1940]), it does not require us to reject the sound reasoning of the Court of Appeals in Matter of Lerner v. Casey (2 NY 2d 355, 373) : If an employee may be dismissed for action upon which incompetency or misconduct may be predicated, the fact that as a part of such action he claims the privileges afforded him under the Fifth Amendment to the United States Constitution does not mandate a contrary conclusion, to wit, the continuation of his employment. (See reasoning of Garner v. Los Angeles Bd., 341 U. S. 716 [1951] and Cohen v. Hurley, 366 U. S. 117 [1961], although these cases were decided prior to Malloy v. Hogan [supra] and the dissents in each, especially in Cohen v. Hurley [supra], diverge from the majority on the basis of the Fifth Amendment.)
“The Constitution does not guarantee public employment” (Mr. Justice Frankfurter concurring in Garner v. Los Angeles Bd., 341 U. S. 716, 724), and the Government by its proper authorities may prescribe rational standards as prerequisites for public employment. (See Matter of Lerner v. Casey, supra.) “ Constitutional protection does [however] extend to the public servant whose exclusion pursuant to a statute is patently arbitrary or discriminatory ” (Wieman r. Updegraff, 344 U. S. 183, 192). Mandatory and summary dismissal for invoking one’s Fifth Amendment privilege against self incrimination is arbitrary and discriminatory if the heavy hand of the statute falls alike on all who exercise their constitutional privilege, ‘1 whether the plea [or refusal to waive immunity] resulted from mistake, inadvertence * * * legal advice conscientiously given,” illness or, of crucial importance, from the failure to afford the individual a reasonable opportunity to choose to speak or act in the “ unfettered exercise of his own will,” to intentionally and intelligently waive his Fifth Amendment rights (Slochower v. Board of Educ., 350 U. S. 551, 558; Malloy v. Hogan, 378 U. S. 1, 8).
A requirement, that each public employee must adhere to the standard prescribed for Caesar’s wife and evince the candor of a Cato, concerning his office, cannot be characterized as an unreasonable condition of employment. This is the duty imposed by section 6 of article I of the New York Constitution and section 1123 of the Charter of the City of New York.
*736 If the mere statement of present refusal to waive one’s Fifth Amendment rights is interpreted as a prima facie rather than a conclusive basis for discharge, the subject provisions are not repugnant to constitutional mandates as mirrored by the United States Supreme Court pronouncements. Nothing in either of the subject provisions requires a contrary interpretation, i.e., a self-executing application; and common sense dictates that as between two interpretations, one of which would render a provision of law unconstitutional, the second, constitutional, the latter must be adopted.
Accordingly, section 6 of article I of the Constitution of the State of New York, and section 1123 of the Charter of the City of New York are viewed, not as self-executing mandates for summary dismissal, but as affording petitioners the opportunity to explain, and when read in conjunction with chapter 834 of the Laws of 1940 and/or section 75 of the Civil Service Law, as affording the right to be heard. (See Slochower v. Board of Educ., supra; Wieman v. Updegraff, supra; Anti-Fascist Committee v. McGrath, 341 U. S. 123, 168; cf. Cafeteria Workers v. McElroy, 367 U. S. 886, 898.)
Parenthetically, it is noted that the offer for conditional reinstatement, as contained in the letter of the Corporation Counsel received by the court on June 10, 1965, cannot be viewed as a substitute or cure for the deprivation of petitioners’ due process rights.
For the foregoing reasons, the summary dismissal of each petitioner must be deemed violative of due process of law, and the reinstatement of each petitioner and appropriate compensation for the specific interim period involved is ordered. The Police Commissioner of the City of New York and, in the case of petitioner Koutnik, the Board of Trustees of the Police Pension Fund, is directed to take such further action as is consonant with this determination.