127 N.J. Super. 468 (1974)
317 A.2d 764
GEORGE F. KUGLER, JR., ATTORNEY GENERAL OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
EDWARD H. TILLER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 20, 1974.
Decided April 1, 1974.
*471 Before Judges CARTON, LORA and SEIDMAN.
Mr. John De Cicco, Deputy Attorney General, argued the cause for appellant (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. George F. Kugler, former Attorney General of New Jersey, on the brief).
Mr. Barry M. Epstein argued the cause for respondent (Messrs. Reibel, Isaac, Tannenbaum & Epstein, attorneys).
The opinion of the court was delivered by SEIDMAN, J.A.D.
The Attorney General of New Jersey brought this action in lieu of prerogative writs under N.J.S.A. 2A:81-17.2a1 and 4 to remove defendant Edward H. Tiller from his office as a member and director of the Board of Chosen Freeholders (Board) of Union County for allegedly refusing to testify before the grand jury of that county in an investigation being conducted into matters directly relating to his office. Both parties moved for summary judgment. Defendant's motion was granted and the complaint was dismissed with prejudice. Plaintiff appeals. For reasons to be detailed later, we reverse and remand for a plenary hearing.
It appears that in June 1973 and prior thereto the Attorney General was conducting an investigation before the Union County grand jury concerning appointments made by the Board since 1968. Defendant was informed prior to June 4 that he was the target of the investigation and was subpoenaed to appear before the grand jury on that date. Although what transpired there will be discussed at greater length herein, it is sufficient at this point merely to note that defendant "elected" not to testify, and two days later these proceedings were instituted.
The issue to be resolved seems to be one of first impression in this State and arises from N.J.S.A. 2A:81-17.2a1 and 4, the first section of which is as follows:
*472 It shall be the duty of every public employee to appear and testify upon matters directly related to the conduct of his office, position or employment before any court, grand jury or the State Commission of Investigation. Any public employee failing or refusing to so appear and to so testify shall be subject to removal from his office, position or employment.
Section 17.2(a)(4) provides:
If any public employee has subjected himself to removal as provided in section 2 * * * of this act [2A:81-17.2(a)(1)], a proceeding may be instituted to effect such removal in the Superior Court by the Attorney General or a county prosecutor of this State by proceeding in lieu of prerogative writ.
Defendant argues, as he did below, that since he was not asked specific questions directly relating to the performance of his duties, his refusal to testify could not produce his removal from office. The Attorney General, on the other hand, contends that defendant's affirmative declaration that he would not testify warrants his removal under the statute.
The trial judge upheld defendant's position, reasoning as follows:
In the strictest sense, Tiller did not refuse to testify. He merely asserted that it was not his intention to testify. He was never put to the test. He was never actually called upon to testify by having a direct question put to him. The bare assertion that he did not elect to testify should not be construed to be a failure or refusal to testify under the statute. * * *
The application of this statute, as I have indicated, works a forfeiture of office, and consequently the statute should be strictly construed. Such a construction requires that a question "directly related to the conduct of the office, position or employment" be asked of the official, and the official must refuse to answer the question in order for the statute to be applied. This was not done in this case, and therefore Director Tiller is not in violation of the statute.
In our view, the trial judge's conception of the statute was unduly narrow and restrictive and, moreover, not in accord with what we conceive to be the plain statutory purpose and intent to hold public officials accountable for the performance of their office. We have no quarrel with the *473 principle that forfeitures are to be strictly construed. Ben Ali v. Towe, 30 N.J. Super. 19, 23 (App. Div. 1954); 3 Sutherland, Statutory Construction (3 ed. 1943), §§ 5603, 5604. But a statute should not be interpreted so as to produce an unreasonable or absurd result.
There is no problem of self-incrimination under the statute. It was adopted in 1970 following the repeal of its predecessor, N.J.S.A. 2A:81-17.1 and 2, which had provided for the forfeiture of office and other rights in the case of a public official who refused to testify on the ground of self-incrimination. The invalidity of such provision was foreshadowed in Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). In Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968), it was held as a matter of federal constitutional law a public official could not be discharged solely because he asserted the privilege against self-incrimination or refused to sign a waiver of immunity. To the same effect, see Uniformed Sanitation Men Ass'n, Inc. v. Comm'r of Sanitation of New York City, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968). Gardner, however, left the way open for the elimination of the constitutional defect where a public official testified "without being required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself." 392 U.S. at 278, 88 S.Ct. at 1916.
The statute involved here accomplishes that result by providing for "use immunity"; that is, the testimony of a public employee before any court, grand jury or the State Commissioner of Investigation, and the evidence derived therefrom, cannot be used against such public employee in a subsequent criminal proceeding, except that the public employee may be prosecuted for perjury committed while so testifying. N.J.S.A. 2A:81-17.2a2.
Without such immunity the problem is one of striking a balance between the legitimate public interest in the accountability of public officers and their right to be silent. *474 State v. Falco, 60 N.J. 570, 583 (1972). In such cases the constitutional right against self-incrimination ordinarily prevails. But where self-incrimination is no longer at stake, the public interest becomes paramount and the officer may subject himself to dismissal from office if he refuses without justification to account for the performance of his public trust. Uniformed Sanitation Men Ass'n, Inc. v. Comm'r of Sanitation of New York City, supra.
Under the statute here involved the public official's obligation is to appear and testify with respect to "matters directly related to the conduct of his office, position or employment." The court below, in ruling that specific questions had to be asked and the answers refused in order for the removal provisions of the statute to be invoked, placed strong emphasis on three cases: People v. O'Dowd, 8 A.D.2d 468, 188 N.Y.S. 2d 651 (App. Div. 1959); Gardner v. Murphy, 46 Misc.2d 728, 260 N.Y.S.2d 739 (Sup. Ct. 1965) and Slochower v. Bd. of Higher Education of New York City, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1955). Gardner and Slochower are inapposite. Both hold that the summary removal of a public officer for refusing to answer questions in a lawful inquiry violates due process. That issue is not present here.
O'Dowd does not support the trial judge's conclusion that as a matter of law specific, relevant questions have to be put to a recalcitrant public official as a prerequisite to a proceeding for his removal from office. In that case the attorney general, invoking a pertinent provision of the state constitution, filed a complaint to remove from office a public official who had refused to answer certain questions before a grand jury which were claimed to be relevant to the conduct of his office. Actually, the issue was whether the allegation in the complaint that defendant refused to answer, standing alone, was enough to support the cause of action. In denying defendant's motion for dismissal the court held that as a matter of pleading the complaint was sufficient. Whether the questions *475 asked were irrelevant or improper were matters for the trial court to determine.
In his oral opinion the trial judge in the present case queried, "But unless obviously questions are asked, how is the court to determine whether the defendant's assertion that he elects not to testify is a willful and contumacious breach of duty or is a justified refusal based upon valid reasons?" The short answer is that a witness before a grand jury may not make himself the final judge of whether he should submit to interrogation. See, for example, In re Addonizio, 53 N.J. 107, 116 (1968); State v. Craig, 107 N.J. Super. 196, 198 (App. Div. 1969), certif. den. 55 N.J. 169 (1969).
We need not consider the case of a public official who refuses to answer questions which he deems, in the language of Gardner v. Broderick, supra, to be not "specifically, directly, and narrowly relating to his official duties." We assume that if the Attorney General or county prosecutor wished in such case to compel the witness to answer, on pain of being held in contempt, he could present the matter to the court immediately and seek a direction to answer. Cf. In re Schwartz, 134 N.J.L. 267, 270 (E. & A. 1940); In re Pillo, 11 N.J. 8, 17 (1952); In re Boiardo, 34 N.J. 599, 602 (1961); In re Boyd, 36 N.J. 285, 286 (1962). Alternatively, he may invoke the statutory removal procedure, in which case the issue of relevancy can be presented to and decided by a court of competent jurisdiction. See People v. O'Dowd, supra.
Here, however, defendant unqualifiedly declared his intention not to testify. We find nothing in the wording of the statute from which it can fairly be concluded that, despite such declaration, specific, relevant questions must still be put to the witness. It seems evident to us that an election not to testify, absent explanation or excuse, is implicitly a refusal to respond to any and all questions which may be propounded in the grand jury room. Cf. Enrichi v. United States, 212 F.2d 702, 704 (10 Cir.1954). The futility of proceeding, nevertheless, to interrogate the witness is apparent. We hold that in such circumstances the blanket refusal to *476 testify is, without more, sufficient cause for the institution of removal proceedings. Consequently, defendant's motion for summary judgment in the instant case should not have been granted.
It does not follow, however, as plaintiff urges, that on the facts here present summary judgment should have been entered in his favor. In a proceeding under N.J.S.A. 2A:81-17.2a4 the Attorney General or county prosecutor, as the case may be, has the usual burden of proving the cause of action. That burden, however, is met in a case such as the one before us by a showing that defendant was subpoenaed to testify before the grand jury (or, where applicable, the court or State Commission of Investigation) on matters directly related to the conduct of his office and that he refused to testify. It is then incumbent upon defendant to come forward and explain or otherwise justify his refusal.
Of course, this does not preclude the entry of summary judgment if there is no genuine issue as to a material fact. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 73 (1954). But it is the movant's burden to exclude any reasonable doubt as to the existence of any genuine issue of material fact, and all inferences of doubt are drawn against the movant in favor of the opponent of the motion. The papers supporting the motion are closely scrutinized and the opposing papers indulgently treated. Id. at 74-75.
We have carefully examined the record in the light of these well-established principles and are satisfied that genuine issues of material fact exist which should be resolved at a plenary hearing.
Defendant contends he was never informed that the inquiry concerned matters directly related to his office, although he acknowledges being notified prior to his appearance before the grand jury that he was a target of the investigation. We note that neither his affidavit nor that of the deputy attorney general conducting the investigation reveals a clear and specific disclosure to defendant of the precise scope and purpose of the inquiry or of a prospective interrogation *477 of defendant regarding the conduct of his office. It should not be assumed or inferred on a motion for summary judgment that he had such knowledge. What he knew or understood, particularly after consulting his attorney, will have to be developed at a trial. The issue of credibility is ordinarily for the trier of fact. Judson v. Peoples Bank & Trust Co. of Westfield, supra, at 75.
Further issues of fact are raised by defendant's claim that he was not advised of his rights and duties under the public employees statute. He contends that he appeared on the return day of the subpoena prepared to testify, but chose not to do so, after conferring with counsel, when the deputy attorney general warned him that everything he said could be used against him. He states that in spite of his refusal to sign a proffered waiver of immunity, the deputy attorney general, "in effect," requested an oral waiver. He further alleges that he was told by his attorney the statutory immunity was inapplicable since he would not be granted immunity even though he was a target of the investigation.
A somewhat different version is given by the deputy attorney general, who avers that when the written waiver of immunity was refused he anounced his intention to have defendant testify without such waiver and that, after a 45-minute conference with counsel, defendant "elected not to testify."
Defendant was then called before the grand jury and sworn. Unfortunately, the interrogation was so perfunctory, inconclusive and inadequate as to be of very little value. After a few preliminary questions during which the deputy attorney general stated that they were "in the process of conducting an investigation into appointments made by the officials in Union County to county jobs," this colloquy ensued:
Q. Have you discussed with your attorney the fact that you have been informed that you are a target of this investigation? A. I have.
Q. And, has your attorney explained to you that you have a right not to testify? A. He has.
*478 Q. And, has he explained to you that if you do testify, everything you say can and will be used against you in a court of law? A. I elect not to testify.
Q. Mr. Tiller, has your attorney also discussed with you a statute, 2A:81-17, 2A1[sic], the duty of employees to appear and testify, the Public Employees Statute? A. He has.
Q. And, having your duties in mind under that statute, will you testify? A. I elect not to testify.
The questioning of defendant was patently equivocal. The warning that defendant's testimony could be used against him was erroneous and contradictory in view of the statutory provision for use immunity. Moreover, the questions and answers do not reveal exactly what advice defendant received after discussing the statute with his attorney, or what he understood his duties or obligations to be or what the consequences might be if he refused to testify.
Defendant is entitled to an opportunity to present whatever facts he has to explain or justify his refusal to testify. The trial judge will then have to resolve the disputed issues and determine, upon a consideration of all the evidence, whether a case has been made for defendant's removal from office.
Reversed and remanded for trial.