137 N.J. Super. 456 (1975)
349 A.2d 541
WILLIAM F. HYLAND, ATTORNEY GENERAL OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ALEX SMOLLOK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 12, 1975.
Decided December 2, 1975.
*457 Before Judges MATTHEWS, LORA and MORGAN.
Ms. Lois De Julio, Deputy Attorney General, argued the cause for appellant (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
*458 Mr. Miles Feinstein argued the cause for respondent.
PER CURIAM.
Plaintiff William F. Hyland, Attorney General of New Jersey, on November 19, 1974 filed a complaint in lieu of prerogative writ seeking the removal of defendant Alex Smollok from his offices of business manager of the Passaic County Vocational School and secretary to the Board of Education of the Passaic County Vocational School, pursuant to N.J.S.A. 2A:81-17.2a et seq.
On March 7, 1975, during oral argument on plaintiff's motion for summary judgment, the trial judge ordered that defendant be permitted to depose plaintiff Attorney General, Matthew P. Boylan, the Director of the Division of Criminal Justice, and William B. Palleria, the Deputy Attorney General who conducted the state grand jury investigation, in furtherance of defendant's defense that the statute was being selectively enforced against him and to determine if the decisions to subpoena defendant to testify before the state grand jury and to remove him from public office were made in bad faith. A motion for leave to appeal from this order as it applied to Hyland and Boylan was filed with this court. Thereafter, plaintiff's motion for summary judgment was denied by order entered April 23, 1975 in accordance with the court's written opinion of March 17, 1975, following which plaintiff moved for leave to appeal said denial of summary judgment. On April 22, 1975 leave to appeal from both interlocutory orders was granted and the appeals were consolidated.
The record reveals that pursuant to an ongoing investigation of alleged misuse of school funds and employees' services, and alleged kickbacks and bribes in connection with school contracts, defendant was subpoenaed to testify before a state grand jury on September 5, 1974. The Deputy Attorney General in charge, William Palleria, advised defendant of the nature of the investigation and specific areas of inquiry, including defendant's duty to testify under the *459 statute, the statutory grant of immunity, and the possibility of removal from office.
On the advice of counsel defendant read a statement that he was present by virtue of coercion; that he had been indicted daily by the press, despite the fact that he had maintained his innocence; that there had been leaks to the press of what had transpired before the state grand jury; that he had been told the grand jury was going to indict him despite anything he might have to say, and that accordingly, upon the advice of his attorney, he would not answer any questions.
On two subsequent appearances before the grand jury, September 12 and October 17, 1974, defendant was informed of his rights and obligations under the statute but he again refused to answer any questions regarding the alleged misuse of school funds and employees' services and the alleged receipt of bribes and kickbacks in connection with school contracts, despite an order by the assignment judge of Mercer County that he do so.
Defendant's counsel submitted a personal affidavit in opposition to plaintiff's motion for summary judgment in which he stated that defendant was subpoenaed to the state grand jury after many witnesses had been called, after a long series of closed and public hearings, after the State Commission of Investigation had already submitted findings publicly as to defendant's alleged involvement in certain illegal activities, and after the matter had been forwarded to the Attorney General for prosecution. Counsel further stated in his affidavit that a representative of the Attorney General had informed him that Smollok was going to be indicted for the alleged wrongdoing; that Smollok was called before the state grand jury so that the statutory provisions for removal from office could be utilized against him. The affidavit concluded with a statement that Smollok, through counsel, attempted to exercise certain constitutional rights and to have hearings before a Superior Court judge in Trenton, but at Smollok's last appearance before *460 the grand jury it was determined that he would, in fact, testify; however, the Deputy Attorney General in charge at the time informed Smollok and affiant that he was not going to then call him to the grand jury room and that they could leave.
Mindful of the liberal application given to discovery and relying particularly on R. 4:15-1, the trial judge denied plaintiff's application for a protective order preventing defendant from deposing the Attorney General and the Director of the Division of Criminal Justice. However, it is our view the Attorney General and Director of the Division of Criminal Justice, as well as other high-level government officials, should not be deposed, absent a showing of first-hand knowledge or direct involvement in the events giving rise to an action, or absent a showing that such deposition is essential to prevent injustice. Wirtz v. Local 30, International Union of Operating Engineers, 34 F.R.D. 13 (S.D.N.Y. 1963); cf. Virgo Corporation v. Paiewonsky, 39 F.R.D. 9 (D.C. Virgin Islands, 1966).
Not only has defendant failed to meet this threshold burden, but Hyland and Boylan submitted affidavits below denying any active participation or first-hand knowledge in this matter. Clearly, information concerning previous cases brought under the Removal Act which defendant contends is relevant to his defense of selective enforcement, may be obtained from other representatives of the Attorney General's Office. The rationale of the trial judge that since Hyland is the plaintiff he is subject to being deposed ignores the fact that the Attorney General is suing solely in a representative capacity under N.J.S.A. 2A:81-17.2a4.
In his opinion denying plaintiff's motion for summary judgment the trial judge found that defendant Smollok had been subpoenaed to testify before the grand jury; that the subject matter of the inquiry related directly to defendant's conduct in office; that defendant was aware of the purpose and scope of the inquiry, and that defendant had refused to testify on three separate occasions before the grand jury. *461 However, despite the "cloudy picture of the circumstances surrounding his client's decision to testify," the trial judge concluded that the allegation in counsel's affidavit that Smollok had, subsequent to these refusals, decided to testify but the Deputy Attorney General informed him that he would not then be called, supported an inference that Smollok had indeed offered to testify and to purge himself of the prior refusals, thereby raising a material factual issue precluding summary judgment. Drawing an analogy to civil contempt procedures and finding that the primary purpose of the removal statute is not removal but the compelling of testimony by public employees, he held the offer to testify and purge the prior refusals should have been accepted to best serve the spirit of the statute.
Plaintiff contends that unlike N.J.S.A. 2A:81-17.3, which permits a recalcitrant witness to purge himself of contempt by testifying, N.J.S.A. 2A:81-17.2a1 contains no comparable provision. Rather, it categorically states that any public employee who fails or refuses to appear and to testify shall be subject to removal from his office, position or employment. The statute seeks not only to compel a public employee's testimony but above all to set a standard of conduct which must be maintained by all such employees, and provides a means of eliminating from public service those individuals who fail to do so. See Statement of Intent attached to the Judiciary Committee's substitute for Assembly Bill No. 607 adopted April 9, 1953, enacted as L. 1953, c. 259, the predecessor to the present statute. Cf. Kugler v. Tiller, 127 N.J. Super. 468 (App. Div. 1974).
However, in light of the factual context of this case we find it unnecessary to go so far as plaintiff contends and to hold that a public employee can under no circumstances purge himself of the effect of a prior refusal to testify. We leave the resolution of such contention for another case and another day. Here, defendant had three separate and distinct opportunities to testify and each time he refused to do so. Assuming defendant did in fact subsequently offer to *462 testify, his belated proffer and course of conduct nonetheless thwarts a manifest purpose of the statute  to remove public employees who, in violation of their public trust, refuse to testify  and does not constitute compliance therewith.
Defendant argues, as he did below, that there was selective enforcement of the statute in his case. He alleges purposeful and intentional discrimination in violation of his right of equal protection. The trial judge's opinion does not deal with this issue.
In State v. Savoie, 128 N.J. Super. 329, 337 (App. Div. 1974), we held that selectivity in enforcement by itself, absent a showing of invidious and arbitrary classification, does not constitute a violation of constitutional equal protection rights. Likewise, in State v. Boncelet, 107 N.J. Super. 444 (App. Div. 1969), a prosecution for violating the local Budget Act, defendant urged that the prosecution against him was politically motivated and the course of conduct which led to the overexpenditure charge was sanctioned by customary usage, and in singling him out for prosecution he was deprived of the equal protection of the law to which he was entitled under the Fourteenth Amendment. The indictment had followed a general investigation of the financial affairs of the borough by the grand jury pursuant to an order of the assignment judge. We found defendant's contentions to be without merit, stating:
At the most, defendant's proofs would have supported the inference that overexpenditures of local budgets had taken place in certain other municipalities but there had been no prosecutions based thereon. This is a far cry from demonstrating the proof of purposefully discriminatory enforcement necessary to establish a violation of equal protection. [Citations omitted.] Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), on which defendant principally relies, is inapposite in that it involved intentional discrimination rather than mere unequal application of a statute which was fair on its face. The mere fact that a law has not been fully enforced against others does not give a defendant the right to violate it. The true issue here was not whether political considerations had played a hand in initiating the investigation which led to defendant's indictment, *463 but whether defendant had willfully and knowingly violated the statute. [at 453]
See also, State v. Saunders, 130 N.J. Super. 234 (Law Div. 1974); 4 A.L.R.3d 404; Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); cf. U.S. v. Falk, 479 F.2d 616 (7 Cir.1973); La Batt v. Twomey, 513 F.2d 641, 648-649 (7 Cir.1975).
In view of the foregoing it is our conclusion that defendant's allegations of selective enforcement are insufficient to preclude summary judgment against him. Defendant makes no showing or even allegation of any arbitrary or invidious classification, nor has he complained of any invasion of a fundamental interest such as his Fifth Amendment rights. On the contrary, defendant states in his brief that the purpose of seeking depositions of Hyland and Boylan was "to demonstrate when and where the said statute was previously applied and if, in fact, it was not applied in the cases of public officials called before grand juries in New Jersey." However, assuming arguendo rare or sporadic enforcement of the Removal Act, this, under the cases, does not constitute selective prosecution.
Accordingly, the order of the Law Division permitting and directing the depositions of Attorney General William F. Hyland and Matthew P. Boylan, the Director of the Division of Criminal Justice, is reversed. The order of the Law Division denying plaintiff's motion for summary judgment is reversed and the matter is remanded to the Law Division for entry of judgment in favor of the plaintiff and against the defendant and for further proceedings consistent with this opinion.