**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3935-22

JORGE SALCEDO,

    Plaintiff-Appellant,

v.

PUBLIC SERVICE ELECTRIC
& GAS, UNITED WATER NEW
JERSEY, and COUNTY OF
HUDSON,

    Defendants,

and

CITY OF UNION CITY,

    Defendant-Respondent.

_____

Submitted July 16, 2024 – Decided July 29, 2024

Before Judges Sabatino, Perez Friscia, and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2340-20.

Christopher P. Gargano, PC, attorney for appellant (Christopher Peter Gargano, of counsel and on the briefs).

Eric J. Nemeth, PC, attorneys for respondent (Chryzanta K. Hentisz, on the brief).

PER CURIAM

Plaintiff Jorge Salcedo appeals from an April 14, 2022 Law Division order, which granted defendant[1] the City of Union City's motion for a protective order quashing the deposition of its mayor. Plaintiff also appeals from a July 17, 2023 order dismissing his complaint with prejudice. We affirm.

I.

We summarize the facts and procedural history from the record. On June 28, 2018, plaintiff, a laborer employed by defendant's Parks Department, was injured while working at Liberty Park. He was watering plants and had stepped on a sidewalk utility box, which collapsed and caused him to fall. He contends the utility box was in a dangerous condition.

On April 16, 2019, plaintiff filed an Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, request with defendant for all information related to the utility box. Defendant responded no records were available and indicated

---

[1] As discussed below, the other named defendants have been dismissed.

Hudson County owned the area where the accident occurred. Plaintiff then filed an OPRA request with Hudson County, which yielded no results as the property was "not within the Hudson County right of way." Defendant thereafter retained a title company that determined defendant "[wa]s the owner of Liberty Plaza" and no easements existed.

Plaintiff successfully filed a workers' compensation claim. The New Jersey Intergovernmental Insurance Fund ("NJIIF") covered the workers' compensation award, as defendant was a member. Pursuant to N.J.S.A. 34:15-40(f),[2] the NJIIF notified plaintiff that failing to pursue a liability claim against a responsible third party for the accident may result in defendant filing a subrogation action for reimbursement.

On June 29, 2020, plaintiff filed a two-count amended complaint alleging: negligence against Public Service Electric and Gas ("PSEG"), United Water of New Jersey, SUEZ Water, and fictitious parties John Does and ABC companies; and discovery claims against defendant and Hudson County. Plaintiff

---

[2] N.J.S.A. 34:15-40(f) provides an employer or the employee's insurance carrier can institute an action against a liable party if an "injured employee . . . fail[s] within [one] year of the accident to either effect a settlement with the [liable] third person or . . . institute proceedings for recovery of damages for his injuries." The employer or the insurance carrier may only initiate proceedings "[ten] days after a written demand on the injured employee." Ibid.

A-3935-22

acknowledged his workers' compensation claim and defendant's "statutory lien." Defendant was named "for purposes of discovery only" and the claim sought to identify the entities or persons responsible for the utility box condition.

On March 24, 2021, the parties conducted a site visit to observe the condition of the utility box and ascertain potentially responsible entities. On June 28, plaintiff requested depositions of defendant's mayor Brian Stack and defendant's engineer Ralph Tango, Jr., from Colliers Engineering. Defendant's counsel responded by email advising only Tango would appear for a deposition on a later date. Plaintiff continued to request the mayor's deposition. The next day, plaintiff moved to extend discovery, which the motion judge granted as unopposed, extending the discovery end date until November 20. As no depositions had occurred, on November 1, plaintiff again moved to extend the discovery end date, which the judge granted until February 18, 2022.

In January 2022, defendant served answers to interrogatories naming Tango and Alicia Morejan, the Director of the Parks Department, as parties with knowledge of relevant facts. After the parties completed written discovery, plaintiff requested defendant's consent to extend discovery to complete the mayor's and Tango's depositions. On February 15, defense counsel consented to Tango's deposition but stated, "[w]e have not agreed to the dep[osition] of

4

[the m]ayor. . . at this time." Plaintiff again moved to enforce litigant's rights and for a discovery extension representing consent was obtained; however, plaintiff failed to advise the judge of defendant's objections to the mayor's deposition. On March 4, the judge granted plaintiff's unopposed motion, ordering depositions by March 25 and setting an April 19 discovery end date. The judge noted the case by that point had over 630 days of discovery. Defendant moved for reconsideration of the order and requested a protective order quashing the mayor's deposition.

While defendant's motion was pending, plaintiff deposed Tango on March 25. Tango testified he had served as defendant's engineer for thirty-four years and reported to the mayor and commissioners. After years of overseeing defendant's road and infrastructure projects, he relayed there was likely no one more knowledgeable about the projects. He testified Liberty Plaza had existed since the Lincoln Tunnel entrance was built. Tango named multiple departments with park and utility box oversight including: the Department of Public Works ("DPW"), the Parks Department, and the Building Department. He specifically named multiple department heads with possible knowledge. Plaintiff did not seek to depose the identified department heads.

5

On April 14, the judge granted defendant's reconsideration motion, issuing a protective order quashing the mayor's deposition. The judge found "the mayor [wa]s not likely to have relevant information," plaintiff failed to support that "the mayor ha[d] first-hand knowledge," and that the "depositions [of] the [defendant's] Finance, DPW, Parks, and Construction Departments have not been conducted and those may be more fruitful and less burdensome than deposing the mayor."

After the judge's decision, plaintiff did not seek to depose anyone else and sought no further discovery extension. On July 11, 2023, plaintiff voluntarily dismissed co-defendants PSEG and Suez Water.[3] On July 17, approximately fifteen months after the discovery end date, plaintiff appeared for trial. Before the trial judge, plaintiff's counsel acknowledged co-defendants were dismissed and it was "a discovery case, that [was] it." The judge dismissed the complaint with prejudice, finding no viable cause of action, as the only remaining claim was for discovery against defendant.

On appeal, plaintiff contends: a remand reinstating plaintiff's complaint is warranted because the protective order quashing the mayor's deposition was

---

[3] The order noted plaintiff voluntarily dismissed "Suez Water New Jersey, Inc.," incorrectly pleaded as "Suez Water" and "United Water New Jersey."

erroneously entered and extraordinary circumstances surrounding discovery existed, and the trial judge's dismissal of his complaint with prejudice was an abuse of discretion.

II.

We apply "an abuse of discretion standard to [discovery] decisions made by [the] trial courts." C.A. ex rel. Applegrad v. Bentolila, 219 N.J. 449, 459 (2014) (second alteration in original) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)). "[W]e accord substantial deference to a trial court's disposition of a discovery dispute." Brugaletta v. Garcia, 234 N.J. 225, 240 (2018). Further, appellate courts "will not ordinarily reverse a trial court's disposition of a discovery dispute 'absent . . . a judge's misunderstanding or misapplication of the law.'" Ibid. (quoting Cap. Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017)). An abuse of discretion occurs "when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Kornbleuth v. Westover, 241 N.J. 289, 302 (2020) (quoting Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015)).

Generally, parties may discover non-privileged information "which is relevant to the subject matter involved in the pending action." R. 4:10-2(a).

"[A]ppellate courts must start from the premise that discovery rules 'are to be construed liberally in favor of broad pretrial discovery.'" Cap. Health Sys., 230 N.J. at 80 (quoting Payton v. N.J. Tpk. Auth., 148 N.J. 524, 535 (1997)). Discovery requests are to be "reasonably calculated to lead to the discovery of admissible evidence," and an objection that the information will be inadmissible at trial is unavailing. Brugaletta, 234 N.J. at 249 (quoting In re Liquidation of Integrity Ins. Co., 165 N.J. 75, 82 (2000)). Nonetheless, "the scope of discovery is not infinite." K.S. v. ABC Pro. Corp., 330 N.J. Super. 288, 291 (App. Div. 2000).

Rule 4:10-3 provides that "a party" may "for good cause shown" seek "any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "[T]o overcome the presumption in favor of discoverability, a party" seeking a protective order under Rule 4:10-3 "must show 'good cause' for withholding relevant discovery." Cap. Health Sys., 230 N.J. at 80 (quoting R. 4:10-3). "To determine whether the materials sought by [plaintiff] are discoverable, their potential relevance is the initial inquiry. In deciding whether evidence is relevant the focus is on the 'logical connection between the proffered evidence and a fact in issue.'" Liquidation of Integrity Ins., 165 N.J. at 82 (quoting State v. Hutchins, 241 N.J.

Super. 353, 358 (App. Div. 1990)). "N.J.R.E. 401 defines relevant evidence as 'evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action.'" Ibid. (quoting N.J.R.E. 401).

III.

Plaintiff contends extraordinary circumstances exist in this case and the motion judge's protective order quashing the mayor's deposition therefore constituted an abuse of discretion. Plaintiff avers the mayor's deposition was warranted because of his potential factual knowledge, which was demonstrated by his presence in the park for a dedication ceremony and possible knowledge of park projects. We disagree.

Defendant demonstrated good cause to preclude the mayor's deposition as overly burdensome because plaintiff proffered an insufficient foundation to establish the mayor's first-hand knowledge of the utility box or the cause of its collapse. The mayor's position alone as defendant's chief executive officer is an insufficient basis for his deposition. See Hyland v. Smollok, 137 N.J. Super. 456, 460 (App. Div. 1975) (finding depositions of "high-level government officials" are unwarranted "absent a showing of first-hand knowledge or direct involvement in the events giving rise to an action, or absent a showing that such deposition[s] [are] essential to prevent injustice").

9                                                                       A-3935-22

Plaintiff's argument that defendant obfuscated discovery by failing to identify responsible parties and specifically that "Tango lacked any information regarding the individuals or entities involved in performing any work at the subject site" is belied by the record. Tango identified the director of the Parks Department in his answers to interrogatories, and at his deposition named multiple department heads with knowledge of the park area and utility box. Plaintiff's decision not to depose the named individuals with potential knowledge before the discovery end date does not serve as cause for reversal.

We also reject plaintiff's argument that there was limited time to conduct a deposition before the discovery end date. There was sufficient time to serve deposition notices, under Rule 4:14-2, and no discovery extension was sought. Further, under Rule 4:14-2(c), plaintiff failed to notice the deposition of any department members on an identified subject matter, which would have required defendant to designate a representative "to testify on its behalf. . . . as to matters known or reasonably available to the organization." Had plaintiff undertaken further discovery and garnered a basis to support the mayor's deposition, then he could have moved for reconsideration of the protective order.

A presumption of broad discovery is ingrained in our jurisprudence, "[n]evertheless, there are limits." Lipsky v. N.J. Ass'n of Health Plans, Inc., 474

N.J. Super. 447, 464 (App. Div. 2023). We discern no error by the motion judge quashing the mayor's deposition and find no merit to plaintiff's argument that "additional time for discovery to uncover the responsible party behind the hazard" is mandated.

Based on the forgoing, we conclude plaintiff's contention that the trial judge erroneously dismissed his complaint with prejudice on the trial date is also without merit. Plaintiff acknowledged "all of the other defendants" were dismissed because liability "was[] [not] there." The record reflects the only remaining claim was a discovery claim against defendant, discovery ended almost a year and a half earlier, and plaintiff had already exhausted over 630 days of discovery. Given those circumstances, we discern no abuse of discretion by the trial judge in dismissing plaintiff's action with prejudice.

To the extent we have not specifically addressed any of plaintiff's arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11