**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1487-24

BETH WERKSMAN,

     Plaintiff-Appellant,

v.

CITY OF ASBURY PARK,

     Defendant-Respondent,

and

ASBURY PARK PUBLIC
WORKS DEPARTMENT,
A-TECH CONCRETE
COMPANY, and J.E. HENNING,
INC., t/a BIRD CONSTRUCTION,

     Defendants.

_____

Argued November 20, 2025 – Decided January 6, 2026

Before Judges Mawla, Marczyk and Puglisi.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2298-22.

Thomas De Seno (Thomas De Seno, LLC) argued the cause for appellant.

Alissa L. Chang argued the cause for respondent (Trif & Modugno, LLC, attorneys; Alissa L. Chang, on the brief).

PER CURIAM

On leave granted, plaintiff Beth Werksman appeals from two December 2, 2024 Law Division orders: (1) denying her motion to obtain certain video evidence; and (2) granting defendant City of Asbury Park's (the City) cross-motion for a protective order limiting the deposition of John Moor in his capacity as mayor of the City. We reverse the order denying production of the video, affirm in part and reverse in part the order granting the protective order, and remand for further proceedings.

I.

On August 22, 2022, plaintiff filed a negligence complaint against defendants, alleging she suffered injuries when she tripped and fell on a popped screw on the Asbury Park boardwalk on February 24, 2021. On August 16, 2024, the court entered an order permitting plaintiff to "remove a screw from the boards in the area of the Boardwalk and Third Avenue . . . in the presence of the [a]ttorney for the [City] and experts and anyone who may assist in the screw removal within sixty . . . days." The attorneys were ordered to meet and

2

confer prior to the screw removal to "set parameters for the screw removal and chain of custody agreement."

Plaintiff had not yet removed a boardwalk screw when she conducted the deposition of the City's maintenance repairer, Robert Lawton, on September 24, 2024. During the deposition, Lawton stated he had performed maintenance work on the boardwalk's hardpoint[1] on September 13, 2024, to improve aesthetics for an upcoming concert. Lawton said he "[s]crew[ed] down all the screws on the hardpoint" but did not remove or replace any existing screws.

Plaintiff went to the boardwalk the next day and took photographs of screws in the hardpoint area. Based on her observations, plaintiff believed Lawton did not just drill the screws back into the boards but rather removed the old screws and replaced them with new screws.

Plaintiff filed an application for an order to show cause on October 9, 2024, claiming the City possessed surveillance video of Lawton's work on September 13, 2024. Plaintiff sought to preserve and review the video, arguing

---

[1] Lawton described the "hardpoint" as an area of the boardwalk at Third Avenue, which is the area in which plaintiff's accident occurred. Robert Bianchini, the former head of the City's Department of Public Works (DPW), explained the area was "a hardpoint for equipment to get from the street to the beach[,] . . . [which] has been fortified so the equipment wouldn't crash through the boardwalk."

A-1487-24

it would resolve a factual dispute regarding spoliation of critical evidence. The application sought an order: (1) directing the City to preserve, save, sequester, and not spoliate all videos that were the subject of plaintiff's Open Public Records Act (OPRA) request;[2] (2) compelling the City to turn over complete, unedited, and unaltered copies of video footage from September 1 to 14, 2024, showing the hardpoint of the boardwalk; and (3) awarding counsel fees.

The City's opposition argued: the August 16, 2024 order did not prohibit maintenance of the boardwalk or specify a particular screw was to be removed; Lawton did not remove or replace any screws; and the video evidence was not relevant to the current litigation. It also claimed production of the video footage would be unduly burdensome, requiring large amounts of assembling, reviewing, and editing at a cost of $37,000.

Plaintiff's reply stated in part:

> Plaintiff's position on redacting the video is as follows:
>
> Plaintiff obviously needs to see the video of Robert Lawton working at [Thi]rd and Boardwalk in the month of September. It can be one day, ten days or all [fourteen] days.
>
> Plaintiff does not trust [the City] to edit the video at all. Plaintiff requests that the entire [fourteen]-day video be

---

[2] Prior to filing the order to show cause, plaintiff requested the video from the City pursuant to OPRA, N.J.S.A. 47:1A-1 to -11.

downloaded to a drive, which [p]laintiff is willing to supply, and [p]laintiff will look through the video.

Plaintiff also filed a motion to compel the deposition of Moor, based on information she obtained during the deposition of Garrett Giberson, former director of the City's DPW. Giberson testified Moor knew about the inspection and maintenance of the boardwalk, including its condition in 2021, because Moor was formerly a DPW employee. Plaintiff also noted Moor, as mayor, signed a 2023 grant application in which he described the boardwalk as a tripping hazard.

The City opposed the motion to compel Moor's deposition and cross-moved for a protective order. It argued: Giberson was mistaken about Moor's prior DPW employment, which ended in 2011; Moor's deposition was unnecessarily duplicative because plaintiff had deposed Bianchini; and the deposition was unlikely to lead to the discovery of relevant evidence. Plaintiff opposed the cross-motion.

After hearing argument, the court denied the motions by separate orders and written decisions. On the order to show cause, the court found plaintiff's reliance on the August 16, 2024 order misplaced. That order permitted plaintiff to remove a screw but did not specify which screw, did not mandate the preservation of any particular screw, and did not enjoin the City from

5

maintaining its boardwalk. The court noted plaintiff offered no concrete proof the screws had been replaced, nor had she acted within the sixty-day window to remove a screw as authorized by the order. It further determined the requested footage was immaterial to the boardwalk's condition as it existed in 2021 at the time of plaintiff's fall and, therefore, could not substantiate any claim of spoliation or otherwise advance plaintiff's case. The court found plaintiff's request for the video unduly burdensome in both labor and cost, particularly given the lack of demonstrated relevance.

The court also granted in part and denied in part plaintiff's motion to depose Moor and the City's cross-motion for a protective order. It found Giberson's testimony sufficiently ambiguous to warrant a limited deposition of Moor regarding his DPW employment, and his knowledge, stemming from that role, about responsibility for inspecting the boardwalk until February 2021. The court denied plaintiff permission to depose Moor in his capacity as mayor or with respect to the 2023 grant application and boardwalk remediation, finding it to be "unnecessarily duplicative" and not relevant to plaintiff's fall. It further noted "remediation of the entire boardwalk in 2023 is not admissible to prove that [the City] was allegedly negligent in connection with an alleged popped screw on a plank in February 2021." The court cited Szalontai v. Yazbo's Sports

Café, 183 N.J. 386, 402 (2005), Perry v. Levy, 87 N.J.L. 670, 672 (E. & A. 1915), and N.J.R.E. 407, emphasizing New Jersey's strong public policy disfavoring the introduction of post-incident remedial measures to prove negligence.  We granted plaintiff leave to appeal from the interlocutory orders.

## II.

We first address whether plaintiff is entitled to the video of the area purportedly showing Lawton performing maintenance work on the boardwalk hardpoint.  Pointing to the August 16, 2024 order, plaintiff argues there are factual disputes about her potential spoliation claim against the City.  She contends Lawton replaced the screws in the area where the order permitted her to remove a screw.

Plaintiff also argues the City failed to demonstrate good cause to justify the issuance of a protective order for the video.  Citing Piniero v. Division of State Police, 404 N.J. Super. 194 (App. Div. 2008), plaintiff maintains there is no need to protect a party or person from annoyance, embarrassment, or oppression because the video at issue here depicts a public area on the boardwalk.  She further contends production of the video does not present a burdensome expense to the City because no editing is necessary.

A-1487-24

Appellate review of a discovery order is generally limited, and substantial deference is afforded to the trial court unless it "has abused its discretion or its determination is based on" a misunderstanding or misapplication of the law. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011) (quoting Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005)); see also Cap. Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017). The abuse of discretion standard requires us to "generously sustain [the trial court's] decision, provided it is supported by credible evidence in the record." Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 384 (2010).

In applying this standard, appellate courts must start from the premise that the rules of discovery "are to be construed liberally in favor of broad pretrial discovery." Payton v. N.J. Tpk. Auth., 148 N.J. 524, 535 (1997). This notion is based on the principle that "[o]ur court system has long been committed to the view that essential justice is better achieved when there has been full disclosure so that the parties are conversant with all the available facts." Jenkins v. Rainner, 69 N.J. 50, 56-57 (1976). Rule 4:10-2(a) provides:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and

8

location of any books, documents, electronically stored information, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence; nor is it ground for objection that the examining party has knowledge of the matters as to which discovery is sought.

Discovery "otherwise permitted may be limited by the court if it determines that the discovery sought is unreasonably cumulative or duplicative, or the burden or expense of the proposed discovery outweighs its likely benefit." Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 29 (App. Div. 2012) (citing R. 4:10-2(g)).

Plaintiff's claim of spoliation is unavailing because it misreads the August 16, 2024 order, which only permitted plaintiff to remove a screw of her choosing. It neither required the City to preserve the area nor prohibited the City from performing maintenance.

While we are unpersuaded a spoliation issue exists, we nevertheless conclude plaintiff is entitled to the video from the day Lawton performed maintenance on the hardpoint. Plaintiff's fall occurred in February 2021, there was no order to preserve the area, and the order permitting her to remove a screw was entered over three years later. Given plaintiff's certification she periodically

9

surveilled the hardpoint area and could tell the screws were new, the video may definitively confirm whether that is the case or not, and therefore inform her selection of which screw to remove.

We are also persuaded the court's reliance on the labor and expense of redaction was mistaken. When plaintiff filed the order to show cause, there were factual issues regarding the timeframe of the maintenance work, which have since been resolved. During oral argument before us, defense counsel acknowledged the City knew what day the work was performed, and plaintiff's counsel agreed to that temporal limitation. Thus, the two-week timeframe is not an issue.

Moreover, there is no dispute the video depicts a public area of the boardwalk. We cannot envision a viable scenario where the privacy issues cited by the trial court—"HIPAA or juvenile matters and things of that nature"— would be present. Even so, if the City believes there is a privacy issue implicated in the video, the trial court may enter a protective order for production of the video to plaintiff's counsel under appropriate conditions or restrictions.

A-1487-24

We next consider plaintiff's contentions regarding Moor's deposition. She contends she is entitled to depose Moor as a fact witness regarding the condition of the boardwalk, as evidenced by his signature on the grant application. Plaintiff cites Hyland v. Smollok, 137 N.J. Super. 456, 460 (App. Div. 1975), noting "high-ranking government official[s can] be deposed if they have first-hand knowledge of the facts in a particular case."

The trial court permitted plaintiff to depose Moor regarding "his employment with the . . . [DPW] and through that employment his knowledge as to who was responsible to inspect the Asbury Park boardwalk through February 2021." However, the court prohibited plaintiff from asking questions regarding Moor's current position as mayor because

> plaintiff has already deposed several [City] employees with knowledge of the maintenance of the boardwalk including . . . Bianchini, the head of the DPW at the time of plaintiff's alleged slip and fall in 2021. As such, . . . Moor's deposition testimony would be unnecessarily duplicative. Further, the condition of the entire Asbury Park boardwalk in 2023 is not at issue in this case. Plaintiff allege[d] she tripped on a popped screw in February 2021. [The City]'s remediation of the entire boardwalk in 2023 is not admissible to prove that [the City] was allegedly negligent in connection with an alleged popped screw on a plank in February 2021.

We discern no error in the trial court's limitation of the deposition, with one exception. In his position as mayor, Moor signed a grant application stating, "[w]ith the deteriorated condition of the boardwalk decking, trip hazards have increased as boards become warped and lifted. This condition makes strolling the boardwalk or getting onto the beach a safety concern for many." Under the unique circumstances of this case, where the mayor formerly worked for the DPW, signed a grant application acknowledging the increase of boardwalk trip hazards, and was already ordered to be deposed, we are persuaded plaintiff should be permitted to ask questions regarding the factual basis on which Moor made the statements in the grant application.

Affirmed in part; reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1487-24